**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| CONGRESSMAN ROBERT "BOB" ONDER, RICHARD "RICK" BRATTIN, PATRICIA "PAT" THOMAS, AND DEBRA HAVENS | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. ________________ |
| STATE OF MISSOURI and DENNY HOSKINS, in his official Capacity as Missouri Secretary of State, | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Plaintiffs Congressman Robert "Bob" Onder, Richard "Rick" Brattin, Patricia "Pat: Thomas and Debra Havens seek a temporary restraining order and preliminary injunction requiring Defendant Secretary of State Denny Hoskins (the "Secretary") to conduct the November 3, 2026 general election for Missouri's congressional districts using the map established by House Bill 1 ("HB1") — the same map used in the August 4, 2026 primary election —

rather than the map the Missouri Supreme Court ordered the Secretary to use in *Von Glahn v. Hoskins*, --- S.W.3d --- (Mo. banc Sept. 3, 2026). Switching congressional maps between the primary and general elections for the same offices violates the Elections Clause of the United States Constitution, U.S. Const. art. I, § 4, cl. 1, and the equal protection and voting rights of Plaintiffs and similarly situated voters and candidates.

## Standard for Injunctive Relief

Under Fed. R. Civ. P. 65, the Court may issue a temporary restraining order and preliminary injunction. In deciding whether to grant such relief, the Court considers: (1) the movant's likelihood of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between that harm and the injury an injunction would inflict on other parties; and (4) the public interest. *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc).

## Background

On September 12, 2025, the Missouri General Assembly passed HB1, repealing the congressional districts the General Assembly established in 2022 and drawing new congressional districts. On December 9, 2025, a group called People Not Politicians through its executive director, Richard von Glahn, submitted a referendum petition seeking a statewide vote on HB1. PNP's submission triggered the Secretary's statutory duty to review the

referendum petition. While the Secretary and Missouri's local election officials were reviewing PNP's submission, two plaintiffs separately challenged HB 1's effectiveness, seeking a declaratory judgment and an injunction preventing use of the HB 1 plan until voters approved it through the referendum process. *See Maggard v. State*, 733 S.W.3d 411, 413 (Mo. banc 2026). The Missouri Supreme Court unanimously rejected their claims, holding that "the December 9 referendum petition filing did not automatically suspend HB 1 under article III, sections 49, 52(a), or 52(b) of the Missouri Constitution." *Id.* at 421.

Following the Missouri Supreme Court's ruling, the Attorney General released an opinion letter requiring "State and local election officials" to "take all appropriate steps to ensure the HB 1 map is fully implemented in advance of the 2026 primary elections." Mo. Att'y Gen., Op. Letter 03-2026 (May 13, 2026). The State successfully implemented the HB 1 plan for the August 2026 congressional primary elections. More than 1.2 million Missourians voted in those elections under the HB 1 plan. Congressman Onder won the Republican nomination for Missouri's Third Congressional District under that map, Rick Brattin won the Republican nomination for Missouri's Fifth Congressional District, and Pat Thomas voted in the primary as a resident of the Fifth Congressional District under that map.

On August 4, 2026 — the last day to vote in Missouri's congressional primary election — the Secretary certified the referendum petition insufficient, concluding the Missouri Constitution does not authorize a referendum on congressional redistricting. PNP's executive director Richard Von Glahn filed suit in Cole County Circuit Court, which upheld the Secretary's certification. The circuit court specifically found that, at this late juncture, it would be "impossible" for election officials to conduct the ongoing 2026 general election under any congressional redistricting plan other than the HB 1 plan. *See* Exhibit 2 to Complaint, *von Glahn v. Hoskins*, No. 26AC-CC00440, trial court judgment, at P. 36.

On September 3, 2026, the Missouri Supreme Court reversed the Secretary's certification in *Von Glahn*, holding that article III, section 49 of the Missouri Constitution authorizes a referendum on "any act of the general assembly," including HB1. The Missouri Supreme Court ordered the Secretary to place the referendum on the November 2026 ballot and to refrain from implementing or mandating the use of the HB1 map for the November 3, 2026 general election "unless and until HB1 is approved by the voters." *Von Glahn v. Hoskins*, No. SC101805 __ S.W.3d __ at 13. The Missouri Supreme Court did not mention, let alone overturn, the circuit court's finding that using a plan other than the HB 1 plan for the 2026 general election would be "impossible."

As a result, unless this Court intervenes, the State must now do the "impossible" and conduct the November 3, 2026 general election using the congressional districts the General Assembly established in 2022 — different districts than those used in the August 4, 2026 primary for the same offices.

## ARGUMENT

### I. Plaintiffs are likely to succeed on the merits.

#### A. The Elections Clause Claim.

The Elections Clause vests the authority to prescribe "the Times, Places and Manner of holding Elections for . . . Representatives" in "the Legislature" of each state. U.S. Const. art. I, § 4, cl. 1. A state may divest its legislature of some or all of that authority only through a clear and deliberate choice reflected in a clear statement in state law. *Moore v. Harper*, 600 U.S. 1, 34–36 (2023) (state courts "do not have free rein" to intrude on the legislature's Elections Clause authority absent "a fair reading" of state law limiting that power); *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 801, 814 (2015) (upholding transfer of redistricting authority only because the state constitution "directly and immediately" and expressly did so). In the lone case where the U.S. Supreme Court upheld a referendum on congressional redistricting, it did not address whether the Elections Clause permits that result. *Ohio ex rel. Davis v. Hildebrandt*, 241

U.S. 565, 567–68 (1916). In addressing the different arguments presented to it, however, the U.S. Supreme Court still insisted that state law "make it clear" that the referendum applied to the legislature's exercise of its authority to conduct congressional redistricting. *Id.* Indeed, because the Elections Clause is "a direct grant of authority" from the federal Constitution, other state actors may not use general or ambiguous state-law provisions to override the legislature's exercise of that authority. *Carson v. Simon*, 978 F.3d 1051, 1060 (8th Cir. 2020) (per curiam).

Article III, section 49 of the Missouri Constitution is a general referendum provision; it does not mention congressional redistricting, and — unlike the Arizona constitutional provision at issue in Arizona State Legislature — it does not expressly transfer congressional redistricting authority away from the General Assembly. *Von Glahn's* construction of that general provision to reach HB1 does not supply the clear, deliberate statement the Elections Clause demands before a state may divest its legislature of redistricting authority. See *Ariz. State Legislature*, 576 U.S. at 801, 814; *id.* at 843 (Roberts, C.J., dissenting) (citing *Gregory v. Ashcroft*, 501 U.S. 452, 460, 111 S.Ct. 2395, 115 L.Ed.2d 410 (1991) (internal quotation marks omitted)) ("[I]f the drafter was doing something as significant as transforming state law into federal law, he presumably would have taken care to make that dramatic step 'unmistakably clear.'"). ; *West Virginia v.*

*EPA*, 597 U.S. 697, 723 (2022); *Sackett v. EPA*, 598 U.S. 651, 679–80 (2023); *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991) (clear-statement principles apply where a construction of law would upset settled allocations of authority). Plaintiffs therefore are likely to succeed on the merits of their Elections Clause claim.

**B. The Equal Protection/Article I, Section 2 Claim.**

Requiring the general election to proceed under a different congressional map than the one used in the primary election for the same offices independently violates Article I, Section 2 of the U.S. Constitution and the Equal Protection Clause.

Article I, Section 2 guarantees that "[t]he House of Representatives shall be composed of Members chosen every second Year by the People of the several States." U.S. Const. art. I, § 2. Where state law makes the primary "an integral part of the procedure of choice," the right to have one's primary ballot counted is itself "included in the right protected by Article I, § 2." *United States v. Classic*, 313 U.S. 299, 318 (1941). Missouri law makes the primary integral to that choice: "all candidates for elective office shall be nominated at a primary election," § 115.339, RSMo, and the primary winner "shall be the only candidate of that party for the office at the general election," § 115.343, RSMo, subject to replacement only for death, disqualification, or withdrawal, § 115.363.3(1)-(3), .4, RSMo. Missouri courts

have accordingly recognized that "primary elections have constitutional stature" as "an integral part of [the State's] election machinery." *State ex rel. McClellan v. Kirkpatrick*, 504 S.W.2d 83, 86 (Mo. banc 1974). Because "the fusing . . . of the primary and general elections into a single instrumentality for choice of officers," *Smith v. Allwright*, 321 U.S. 649, 660 (1944), and the primary is "a[n] integral part of the entire election process," *Storer v. Brown*, 415 U.S. 724, 735 (1974), changing the congressional districts between the primary and general election does not merely alter the ballot — it fractures that single instrumentality, stripping the [HB1-district] primary electorate's chosen nominees of the mandate their voters conferred.

The same change also violates the Equal Protection Clause. Primary-election procedures are "'state action' within the meaning of the Fourteenth Amendment" and "must be exercised in a manner consistent with the Equal Protection Clause." *Bullock v. Carter*, 405 U.S. 134, 140–41 (1972). "Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote . . . wherever their home may be in that geographical unit." *Gray v. Sanders*, 372 U.S. 368, 379 (1963). Switching congressional maps between the primary and general election creates two classes of voters: those whose district stays the same, who retain the full benefit of their primary vote, and those — like Pat Thomas — reassigned to a new district, who must choose among candidates

they never had the opportunity to evaluate, support, or oppose in the primary. That disparity in voting power is itself the equal-protection violation; it arises not from any defect in either map standing alone, but from switching maps between the two stages of a single election.

Congressman Onder and Brattin were nominated by, and campaigned to, the HB1-district electorate; Pat Thomas cast a primary ballot as a resident of the Fifth Congressional District under that same map. Requiring the general election to proceed instead under the districts ordered in *Von Glahn* would subject each of them to exactly the harm Article I, Section 2 and the Equal Protection Clause forbid.

## II. Plaintiffs will suffer irreparable harm absent injunctive relief.

The harm here is concrete, imminent, and irreparable. "Irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages." *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1346 (8th Cir. 2024). Courts routinely deem restrictions on or loss of "fundamental voting rights irreparable injury." *League of Women Voters v. N.C.*, 769 F.3d 224, 247 (4th Cir. 2014). So, too, do courts routinely deem an organization's or candidate's "lost opportunities to conduct election-related activities" or unrecoverable wasted resources expended on such activities to be irreparable harm. *Get Loud Arkansas v. Jester*, 171 F.4th 1058, 1067 (8th Cir. 2026).

Plaintiffs' irreparable harm from the Missouri Supreme Court's order is plain. Pat Thomas has been reassigned from the Fifth Congressional District, where she voted in the primary, to the Third Congressional District for the general election, and must now evaluate unfamiliar candidates and issues on a compressed timeline. Pat Thomas's voting rights and equal protection rights have been violated; will be violated if the ongoing 2026 general election is conducted under a plan other than the HB 1 plan; and cannot be vindicated because the general election cannot be re-run later. *See, e.g.*, *id.* Moreover, "[i]t is to be expected that a voter hopes to find on the ballot a candidate who comes near to reflecting his policy preferences on contemporary issues," and Pat Thomas must now attempt to do so in an unfamiliar district. *Lubin v. Panish*, 415 U.S. 709, 716 (1974).

Congressman Onder and Rick Brattin face separate, concrete irreparable harm: campaign resources already spent communicating with voters in the HB1 districts will be wasted, and they must now identify, and campaign to, a different set of voters in a truncated period before November 3, 2026. These harms cannot be undone or adequately compensated after the fact, because a federal general election, once held, cannot be re-run, and money damages are unavailable to redress this harm.

## III. The balance of harms and public interest favor injunctive relief.

The State has no legitimate interest in conducting a congressional election in a manner that violates the United States Constitution. "[T]he public . . . has no interest in enforcing an unconstitutional [act]." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006). Meanwhile, an injunction preserving the HB1 map for the November 3, 2026 general election imposes no additional administrative burden on Defendants — it is the map already in use and the map for which ballots, polling place assignments, and voter records are already configured, since it was used just weeks ago in the August 4, 2026 primary. In fact, it *relieves* Defendants of the burden of doing the "impossible." In particular, the circuit court in *Von Glahn* found that it would be "impossible" for election officials to conduct the ongoing 2026 general election under any plan other than the HB 1 plan. *See* Exhibit 2 to Complaint, *von Glahn v. Hoskins*, No. 26AC-CC00440, trial court judgment, at P. 36. The Missouri Supreme Court did not even mention that finding, let alone overturn it. Exhibit 3 to Complaint, *von Glahn v. Hoskins*, No. SC101805, -- S.W.3d – (Mo. banc 2026).

Indeed, implementing a different map for the general election requires new district assignments, new ballots, and re-education of voters and election officials in a compressed period before November 3, 2026. In addition to being

"impossible," implementing a different plan now will result in widespread "voter confusion," an erosion in public confidence "in the integrity of [the State's] electoral processes," and "consequent incentive to remain away from the polls." *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). The Missouri Supreme Court has unleashed nothing short of electoral chaos on the State—even as it buried its head in the sand and attempt to ignore the plain consequences of its order.

The balance of equities and the public interest therefore favor maintaining the status quo map used in the primary election — not the map ordered by *Von Glahn* — for the November 3, 2026 general election.

**Conclusion**

For the reasons stated herein, Plaintiffs respectfully request that the Court grant a temporary restraining order and preliminary injunction as described in Plaintiffs' Motion filed herewith.

Respectfully submitted,

**ELLINGER BELL LLC**

By: */s/ Marc H. Ellinger*
Marc H. Ellinger, #40828(MO)
Stephanie S. Bell, #61855(MO)
Cole D. Bradbury, #62760(MO)
308 East High Street, Suite 300
Jefferson City, MO 65101
Telephone: (573) 750-4100
Facsimile: (314) 334-0450
E-mail: mellinger@ellingerlaw.com

E-mail: sbell@ellingerlaw.com
E-mail: cbradbury@ellingerlaw.com

*Attorneys for Plaintiffs*