**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

ROBERT "BOB" ONDER, ET AL.,

*Plaintiffs*,

v.

STATE OF MISSOURI, ET AL.,

*Defendants*.

Case No. 4:26-cv-01424

**STATEMENT IN SUPPORT PLAINTIFFS' REQUEST FOR A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

Under the extraordinary circumstances of this case, Defendants agree that Plaintiffs meet the thresholds warranting a temporary restraining order and join them in requesting that this Court issue said relief. *See Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted). Plaintiff candidates will be forced to compete in districts in which they did not run in the Primary Election. Meanwhile, Plaintiff voters will be forced to cast general-election ballots for a different slate of candidates than they considered in the Primary Election. For the reasons detailed by Plaintiffs, that gives rise to clear-cut violations of the United States Constitution.

As explained by Plaintiffs, the Missouri Supreme Court has ordered Defendants here to conduct the upcoming General Election according to a different map than the Primary Election. Mem. in Support of TRO at 4. The Missouri Supreme Court's order patently violates federal law in several respects. Hence, Plaintiffs are likely to succeed on at least one of their claims.

First, the order violates the U.S. Constitution's Elections Clause. U.S. Const. art. I, § 4. The Clause provides that "[t]he Times, Places and Manner of holding Elections for Senators and Representatives, shall be prescribed in each State by the *Legislature* thereof." *Id.* (emphasis added). But, the Missouri Supreme Court held that a referendum *petition*—signed by just five percent of legal voters in two-thirds of the congressional districts in the State (approximately 3.3% of the State's voters)—can suspend Missouri's duly-enacted congressional map. *See von Glahn v. Hoskins*, No. SC101805, slip op. 8–9 (Mo. Sept. 3, 2026) (quoting Mo. Const. art. III, § 52(a)). If *that* profoundly anti-democratic arrangement is permissible, little is left of the Elections Clause. *See* Mem. in Support of TRO at 5–7.

Second and relatedly, Defendants agree that a referendum cannot proceed against federal-congressional maps *at all* in Missouri because the Missouri Constitution contains no "positive and clear" statement authorizing that abrogation of the General Assembly's authority. *See United States v. Gradwell*, 243 U.S. 476, 485 (1917).

Third, a judicial order dramatically altering a congressional map *between* a primary and a general election violates several constitutional provisions. Article I, Section 2 provides that "[t]he House of Representatives shall be composed of Members *chosen every second Year by the People* of the several States." U.S. Const. art. I, § 2 (emphasis added). This protects the right of Missourians to select their representatives in both primary and general elections. *See United States v. Classic*, 313 U.S. 299, 318 (1941). 1.2 million Missourians participated in the State's

primary under the HB 1 map, in August 2026. *See* Compl. ¶ 78; Ex. 2 at 3. Yet the Missouri Supreme Court just threw those votes into the dustbin—requiring the winners of the primary election to run in very different congressional districts. *See* Compl. ¶ 37.

Thus, absent a stay, hundreds of thousands of voters will be forcibly switched to new districts and made to vote on general election candidates they had no role in choosing. *See* Compl. ¶¶ 38, 94–96; Ex. 2, at 4. This unprecedented disenfranchisement violates Article I, § 2, the constitutional right to vote, and the Equal Protection Clause. *See Gray v. Sanders*, 372 U.S. 368, 379 (1963) ("Once the geographical unit for which a representative is to be chosen is designated, all who participate in the election are to have an equal vote—whatever their race, whatever their sex, whatever their occupation, whatever their income, and *wherever their home may be* in that geographical unit." (emphasis added)); *Classic*, 313 U.S. at 318 ("Where the state law has made the primary an integral part of the procedure of choice . . . the right of the elector to have his ballot counted at the primary, is likewise included in the right protected by" the Constitution's right to vote.).

Despite Plaintiffs' clear entitlement to legal relief, the State can do nothing to remedy the situation. The Missouri Supreme Court's order flatly prohibits the State from conducting the general election according to the HB 1 map. *See von Glahn*, slip op. 13–14 ("The secretary and all of those acting in concert with him are restrained and enjoined from implementing, using, or mandating the use of the congressional redistricting in HB 1 for the November 2026 general election or at any other time

thereafter unless and until HB1 is approved by the voters at the November 2026 general election . . . .” (citing Mo. Const. art. XII, § 2(b))). Only a federal-court order can rectify that legal violation.

The equities likewise favor Plaintiffs. The Missouri Supreme Court’s order is inflicting unprecedented chaos and profound injury on Missouri. A state trial court found that holding the 2026 General Election under a different congressional map would be “impossible.” Ex. 2, at 36. This jeopardizes Missouri’s ability to hold a timely election in compliance with federal law. 2 U.S.C. § 7; *see Foster v. Love*, 522 U.S. 67, 73–74 (1997) (holding that State may not run federal election in conflict with federal timing of 2 U.S.C. § 7, which requires an election this year on November 3, 2026). And Missouri is almost certain to violate UOCAVA’s deadline for sending out absentee ballots to overseas and military ballots absent a federal-court order. *See* Emergency App. for Stay and Administrative Stay Pending Appeal at 33–34, *Hoskins v. von Glahn*, 26A304 (U.S. Sept. 4, 2026).

Plaintiffs and the public face their own irreparable injury. As the trial court found, changing the map will “move hundreds of thousands of voters into different districts.” Ex. 2, at 4. This includes Plaintiff voters. *See* Compl. ¶ 38. As Plaintiffs explain, both the candidate and voter Plaintiffs face injuries to their right to vote and right to conduct election-related activities. Mem. in Support of TRO at 9. Any time “constitutional rights are threatened or impaired, irreparable injury is presumed.” *Obama for Am. v. Husted*, 697 F.3d 423, 436 (6th Cir. 2012). Likewise, no interest is

furthered in conducting an unlawful election. Mem. in Support of TRO at 11. To the contrary, the State wishes to comply with federal law for the benefit of *all* its voters.

Defendants are aware of no court in U.S. history ordering a State to change substantially its congressional map *after* a primary election has occurred. This destabilizing and unprecedented situation calls for extraordinary relief. The Missouri Supreme Court's order prevents the State from making this situation right. Given these circumstances and to avoid catastrophic injury to Missouri citizens, Defendants agree that Plaintiffs satisfy the requirements for a temporary restraining order and preliminary-injunctive relief. *See Nken*, 556 U.S. at 434. The Court should therefore grant Plaintiffs' requested relief to preserve the integrity of Missouri's election.

Dated: September 5, 2026

Respectfully submitted,

**CATHERINE L. HANAWAY**
ATTORNEY GENERAL

/s/ *Louis J. Capozzi III*

Louis J. Capozzi III, #77756(MO)
*Solicitor General*
William James Seidleck, #77794(MO)
*Principal Deputy Solicitor General*
Graham Miller, #77656(MO)
*Deputy Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
Old Post Office Building
815 Olive Street, Suite 200
St. Louis, MO 63101
Phone: (573) 645-9662
Louis.Capozzi@ago.mo.gov
William.Seidleck@ago.mo.gov
Graham.Miller@ago.mo.gov

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2026 the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

/s/ *Louis J. Capozzi III*