**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| CONGRESSMAN ROBERT "BOB" ONDER, *et al.*, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Case No. 4:26-cv-01424 |
| STATE OF MISSOURI *et al.*, | ) | |
| Defendants. | ) | |

**<u>MEMORANDUM OF LAW IN SUPPORT OF PROPOSED INTERVENOR-DEFENDANTS' MOTION TO INTERVENE</u>**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES....iii

I. THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT UNDER RULE 24(a)(2)....6

A. This Motion Is Timely....7

B. Proposed Intervenors Have a Direct, Legally Protectable Interest....8

C. Disposition of This Action May Impair Proposed Intervenors' Interests....9

D. Existing Defendants Cannot Adequately Represent Proposed Intervenors' Interests....9

II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION UNDER RULE 24(b)....13

III. THE COURT SHOULD GRANT THIS MOTION ON AN EXPEDITED BASIS....14

# TABLE OF AUTHORITIES

**Cases**

*ACLU of Minnesota v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088 (8th Cir. 2011)................ 7
*Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787 (2015) ........................................................................................................................ 13
*Berry v. Ashcroft*, No. 4:22-CV-00465-JAR, 2022 WL 1540287 (E.D. Mo. May 16, 2022) ........................................................................................................................ 8
*Bush v. Viterna*, 740 F.2d 350 (8th Cir. 1984) ............................................................. 13
*Hoskins v. von Glahn*, No. 26A304 (U.S.)................................................................ 2, 5
*Hoskins v. von Glahn*, No. 26A-304 (U.S.) ................................................................ 12
*Hunt v. Roth*, 648 F.2d 1148 (8th Cir. 1981) ................................................................11
*Jenkins v. Missouri*, 78 F.3d 1270 (8th Cir. 1996) .......................................................... 7
*Lord v. Veazie*, 49 U.S. (8 How.) 251 (1850)...................................................................11
*Missouri Gen. Assembly v. von Glahn*, No. 4:25-CV-1535 (E.D. Mo. Oct. 15, 2025)2, 3, 12
*Moore v. Harper*, 600 U.S. 1 (2023) ............................................................................ 13
*Nash v. Blunt*, 140 F.R.D. 400 (W.D. Mo. 1992)............................................................. 7
*Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969 (8th Cir. 2014).................. 6
*Ohio ex rel. Davis v. Hildebrandt*, 241 U.S. 565, 569 (1916) ...................................... 4, 13
*South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783 (8th Cir. 2003)6, 8, 13
*Turn Key Gaming, Inc. v. Ogallala Sioux Tribe*, 164 F.3d 1080 (8th Cir. 1999) .... 6, 9, 13
*United States v. Johnson*, 319 U.S. 302 (1943) ............................................................ 10
*United States v. Union Elec. Co.*, 64 F.3d 1152 (8th Cir. 1995).................................... 7, 9
*von Glahn v. Hoskins*, No. SC101805 (Mo. banc Sept. 3, 2026)....................................... 1

**Statutes**

§ 116.150.3, RSMo ........................................................................................................ 7

**Other Authorities**

Fed. R. Civ. P. 24(b)(1)(B)............................................................................................. 16
https://ballotpedia.org/Pat_Thomas ................................................................................ 9
https://missouri.gop/your-local-gop/ ................................................................................ 9
https://missouriindependent.com/2021/11/04/missouri-redistricting-panels-feature-party-leaders-political-pros-activists/ ..................................................................... 9
https://showme.missouri.edu/2023/mizzou-alumni-association-recognizes-luetkemeyer-and-thomas-with-geyer-award/ ........................................................... 9
https://www.newstribune.com/news/2023/jan/09/jefferson-city-woman-embraces-jobs-ability-to/ .............................................................................................. 9
Mo. Const. Art. III Sec. 52(b). ......................................................................................... 12
*Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972) ................................12, 16

This Court needs an intervenor to fully defend the state law about which Plaintiffs complain and these Intervenors have the right to do that. A few days ago, in *von Glahn v. Hoskins*, No. SC101805 (Mo. banc Sept. 3, 2026), the Missouri Supreme Court was called upon to interpret Missouri law and unanimously held that the Missouri Constitution authorizes a referendum on House Bill 1 ("HB 1"), the congressional redistricting bill, and ordered the Secretary of State to place the referendum on the November 2026 ballot. The Court said: "HB 1 is not the law and has never been the law. There is only one valid congressional redistricting in effect—the congressional redistricting the General Assembly established in 2022." *Von Glahn v. Hoskins*, No. SC101805, slip op. at 12 n.8 (Mo. banc Sept. 3, 2026).

Given this, the Court ordered Defendant Hoskins and all those acting in concert with him to refrain from implementing the HB 1 map for the general election. The Court also pointed out that it had much earlier advised the Secretary of State that the HB 1 districts might not be the law. "In two separate cases in May, this Court stated it could not determine whether the congressional redistricting in HB 1 was in effect until the secretary issued his certification and the judicial review authorized by the General Assembly was complete. *Maggard*, 733 S.W.3d at 419-20; *NAACP*, 734 S.W.3d at 341 n.4." *von Glahn* at 12. This action asks this federal district court to override those rulings of the Missouri Supreme Court.

Proposed Intervenors von Glahn and PNP are the parties who obtained the judgment now under attack. PNP organized the referendum petition and collected over 300,000 signatures. von Glahn, PNP's executive director, filed the petition with the Secretary of State, challenged the Secretary's certificate of insufficiency, and prevailed

before the Missouri Supreme Court as the named plaintiff. No non-party has a more direct interest in defending that judgment.

And it should be clear that the existing defendants will not do so. The Secretary of State is currently asking the United States Supreme Court to stay the very ruling he would nominally defend here. *See Hoskins v. von Glahn*, No. 26A304 (U.S.). His filings with the Supreme Court call the Missouri ruling "bizarre" and "profoundly anti-democratic." Hoskins Emergency Application for Stay and Administrative Stay Pending Appeal at 12. And his position is deep-rooted. The Defendant State of Missouri and Hoskins previously sued to prevent Proposed Intervenors from even delivering the referendum petition to Defendant Hoskins. *Missouri Gen. Assembly v. von Glahn*, No. 4:25-CV-1535 (E.D. Mo. Oct. 15, 2025). As detailed below and in Proposed Intervenors' Motion to Dismiss, the circumstances of this case raise serious questions about whether a genuine adversarial proceeding exists. As presently constituted, no party before this Court will present a defense of the Missouri Supreme Court's judgment or the requirements of Missouri law—a deficiency that implicates both the adequacy of representation and Article III's case-or-controversy requirement. Intervention should be granted as of right or, in the alternative, by permission of the Court.

## BACKGROUND

On September 12, 2025, the Missouri General Assembly passed HB 1 in a special session, redrawing Missouri's eight congressional districts. (*See* Compl. ¶ 15.) Governor Kehoe signed HB 1 into law on September 28, 2025. (*See* Compl., Ex. 2 at 1.) On December 9, 2025, PNP, through its executive director Richard von Glahn, submitted a referendum petition on HB 1 to the Secretary of State, seeking to suspend HB 1's

effectiveness and place it before Missouri voters for approval or rejection. *See* Compl., Ex. 3 at 2.)

The State of Missouri itself has recognized that PNP and von Glahn are the real parties in interest in any dispute over the referendum on HB 1. On October 15, 2025, the Missouri General Assembly, Secretary of State Hoskins, and the State of Missouri filed suit in this Court naming von Glahn and PNP as the sole defendants, seeking to enjoin them from pursuing the referendum. *See Missouri Gen. Assembly v. von Glahn*, No. 4:25-CV-1535-ZMB (E.D. Mo.). In that action, the State alleged that "Defendants Richard von Glahn and People Not Politicians[] have initiated a referendum process that would strip the General Assembly of its authority over redistricting" and sought "to prevent Defendants from unconstitutionally usurping the General Assembly's vested authority." (Compl. ¶¶ 1, 11, *Missouri Gen. Assembly v. von Glahn*, No. 4:25-CV-1535 (E.D. Mo. Oct. 15, 2025).)

The State simultaneously moved for a preliminary injunction targeting von Glahn and PNP specifically, arguing that "Defendants are attempting to transfer the General Assembly's authority over federal redistricting to a referendum vote." (Mem. in Supp. of Mot. for Prelim. Inj. at 1, *Missouri Gen. Assembly v. von Glahn*, No. 4:25-CV-1535 (E.D. Mo. Oct. 15, 2025).) The State's own prior pleadings establish that PNP and von Glahn are the indispensable parties to any litigation over the referendum on HB 1. The federal district court dismissed that action on ripeness and abstention grounds in December 2025, and the State and Hoskins chose not to appeal.

On November 24, 2025, Plaintiffs' current counsel filed an amicus brief in the 2025 federal action on behalf of the Missouri Republican State Committee, supporting the Defendant State of Missouri's motion for a preliminary injunction against von Glahn

and PNP. (*See* Amicus Br. of Mo. Republican State Comm., *Missouri Gen. Assembly v. von Glahn*, No. 4:25-CV-1535-ZMB (E.D. Mo. Nov. 24, 2025).) The same counsel then represented the Republican National Committee, National Republican Congressional Committee, and Missouri Republican State Committee as intervenors-respondents before the Missouri Supreme Court in *von Glahn v. Hoskins*.

On August 4, 2026—the date of Missouri's congressional primary elections, and the statutory deadline for the Secretary's certification decision, *see* § 116.150.3, RSMo—Secretary of State Denny Hoskins issued a certificate of insufficiency, finding "the referendum petition is insufficient under the Missouri Constitution because the Missouri Constitution does not authorize a referendum on congressional redistricting plans passed by the General Assembly." (Compl., Ex. 3 at 1-2.); (*see also* Compl. ¶ 25.) Von Glahn challenged that certification the same day in the Circuit Court of Cole County, Missouri, under § 116.200.1, RSMo. (*See* Compl., Ex. 3 at 1-2.) The circuit court upheld the Secretary's certification. (*See* Compl., Ex. 3.)

On appeal, the Missouri Supreme Court reversed. In its unanimous September 3, 2026 decision in *von Glahn v. Hoskins*, No. SC101805 (Mo. banc Sept. 3, 2026), the Court held that Article III, Section 49 of the Missouri Constitution authorizes a referendum on "any act of the general assembly," including congressional redistricting legislation, and that "no exception applies." (Compl. Ex 3 at 1.) The Court noted that the U.S. Supreme Court "has held on multiple occasions the United States Constitution permits a state to authorize a referendum as to legislation drawing new congressional districts," citing*, inter alia*, *Ohio ex rel. Davis v. Hildebrandt*, 241 U.S. 565, 569 (1916). (*Id.* at 5.) The Court ordered the Secretary to issue a certificate of sufficiency, to place the referendum on the November 2026 ballot, and to refrain from implementing or

mandating the use of the HB 1 map for the November 3, 2026 general election "unless and until HB1 is approved by the voters." (*Id.* at 12–13.)

On September 3, 2026, the Attorney General applied to the Missouri Supreme Court for a stay of its decision. The Missouri Supreme Court denied the stay application on September 4, 2026. (*See* Compl. ¶¶ 43–44.) The Secretary of State has now filed an emergency application for a stay with the United States Supreme Court. *See Hoskins v. von Glahn*, No. 26A304 (U.S.). The Intervenors-Respondents—the Republican National Committee, National Republican Congressional Committee, and Missouri Republican State Committee—have filed a brief supporting the Secretary's stay application. *See id.*

Plaintiffs filed this action on September 4, 2026—within hours of the Missouri Supreme Court's denial of the stay—seeking a temporary restraining order and preliminary injunction requiring the Secretary to use the HB 1 map for the November 2026 general election. (*See* Compl. ¶¶ 50–93; Mot. for TRO & Prelim. Inj.) Plaintiffs do not appear to allege that the Secretary actually intends to use the HB 1 maps (i.e. that he will drop his request to the United States Supreme Court) or that he will take any other action that will injure them. Plaintiffs' claims directly challenge the Missouri Supreme Court's decision in *von Glahn*, alleging it violates the Elections Clause, U.S. Const. art. I, § 4, cl. 1, Article I, Section 2, and the Equal Protection Clause of the U.S. Constitution. (*See* Compl. ¶¶ 50–93.)

There's good reason for that. Plaintiffs appear to be fully aligned with Intervenor-Respondents in *von Glahn*. Plaintiff Pat Thomas is a former official with the Missouri Republican Party, delegate to the 2016 Republican National Convention, and current

staff member to a Missouri state senator.[1] Plaintiff Debra Havens is also intimately involved in Missouri Republican Party operations. She currently serves as the chair of the Maries County Republican Party.[2] And goes without saying that Plaintiffs Onder and Brattin's interests are aligned with Defendants. They are current Republican candidates for Congress.

## ARGUMENT

### I. THE COURT SHOULD GRANT INTERVENTION AS OF RIGHT UNDER RULE 24(a)(2).

Federal Rule of Civil Procedure 24(a)(2) permits intervention by anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." The Eighth Circuit applies a four-factor test: (1) timeliness, (2) a recognized interest in the subject matter, (3) the possibility that the interest may be impaired, and (4) inadequate representation by existing parties. *South Dakota ex rel. Barnett v. U.S. Dep't of Interior*, 317 F.3d 783, 785 (8th Cir. 2003). Rule 24 is to be construed liberally, and doubts resolved in favor of the proposed intervenor. *Turn Key Gaming, Inc. v. Ogallala Sioux Tribe*, 164 F.3d 1080, 1081 (8th Cir. 1999); *see also Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 975 (8th Cir. 2014). This liberal construction applies with particular force in redistricting cases. In addition to the

[1] *See* https://showme.missouri.edu/2023/mizzou-alumni-association-recognizes-luetkemeyer-and-thomas-with-geyer-award/; https://www.newstribune.com/news/2023/jan/09/jefferson-city-woman-embraces-jobs-ability-to/; https://ballotpedia.org/Pat_Thomas; https://missouriindependent.com/2021/11/04/missouri-redistricting-panels-feature-party-leaders-political-pros-activists/.

[2] https://missouri.gop/your-local-gop/.

normal liberal construction, the Western District of Missouri has recognized, "redistricting cases seem typically to follow the exception rather than the general rule" regarding presumptions of adequate representation by state defendants, because intervention in such cases is "necessary as a check on the possible intrusion of partisan interests." *Nash v. Blunt*, 140 F.R.D. 400, 402 (W.D. Mo. 1992). Each factor favors intervention here.

A. This Motion Is Timely.

This Motion is timely. Timeliness is determined by considering "all of the circumstances," with particular attention to: (1) how far the proceedings have progressed; (2) the proposed intervenor's reason for delay in seeking intervention; and (3) the possible prejudice to the parties already in the proceedings if the court allows intervention. *Jenkins v. Missouri*, 78 F.3d 1270, 1273–74 (8th Cir. 1996). Courts also consider the prospective intervenor's knowledge of the litigation. *ACLU of Minnesota v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1094 (8th Cir. 2011). All three factors are easily met here.

First, the proceedings have barely begun: Plaintiffs filed their Complaint on September 4, 2026. This Motion is being filed the next day, before any responsive pleading is due and before any ruling on Plaintiffs' emergency motion. Second, there has been no delay whatsoever; Proposed Intervenors are seeking intervention at the earliest possible stage. Third, no party can claim prejudice from intervention at this stage. The knowledge-of-the-litigation consideration also supports timeliness because Proposed Intervenors acted immediately upon learning of this action. *See United States v. Union Elec. Co.*, 64 F.3d 1152, 1158–59 (8th Cir. 1995) (timeliness assessed in light of totality of circumstances).

B. Proposed Intervenors Have a Direct, Legally Protectable Interest.

PNP and von Glahn have a direct, legally protectable interest in this litigation. They organized and collected over 300,000 signatures in support of the referendum petition on HB 1. von Glahn filed the petition with the Secretary of State, challenged the Secretary's certificate of insufficiency in state court, and personally prevailed before the Missouri Supreme Court in the very decision that Plaintiffs now ask this Court to effectively nullify. There was no dispute that he had standing to obtain that judgment.

A "direct, substantial, legally protectable interest" satisfies the Rule 24(a)(2) standard. *Barnett*, 317 F.3d at 785. Courts routinely grant intervention in redistricting cases to parties with direct stakes in the outcome. *See Berry v. Ashcroft*, No. 4:22-CV-00465-JAR, 2022 WL 1540287 (E.D. Mo. May 16, 2022) (granting intervention to proposed intervenors who had pursued parallel state court redistricting proceedings and had direct interests in the redistricting outcome). The interest here is beyond dispute: Proposed Intervenors are the very parties who prosecuted the underlying state court action, obtained the judgment now under attack, and whose constitutional rights under the Missouri Constitution—including the right to a referendum on legislative acts—are at stake.

The State of Missouri has itself confirmed the centrality of Proposed Intervenors' interest. In October 2025, the State sued von Glahn and PNP in this Court as the sole defendants in a case challenging the referendum—identifying them as the parties whose actions were "unconstitutionally usurping the General Assembly's vested authority." (Compl. ¶ 11, *Missouri Gen. Assembly v. von Glahn*, No. 4:25-CV-1535 (E.D. Mo. Oct. 15, 2025.)) Having named PNP and von Glahn as the indispensable defendants when

the State wanted to stop the referendum, the State can hardly deny that PNP and von Glahn have a legally protectable interest when the shoe is on the other foot.

C. Disposition of This Action May Impair Proposed Intervenors' Interests.

The threshold for demonstrating impairment under Rule 24(a)(2) is not onerous. Rule 24 requires only that disposition of the action "may as a practical matter impair" the proposed intervenors' interests. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995). Moreover, "[i]t is enough under Rule 24(a) that [the proposed intervenors] could be prejudiced by an unfavorable resolution in later litigation." *Turn Key Gaming, Inc. v. Ogallala Sioux Tribe*, 164 F.3d 1080, 1082 (8th Cir. 1999).

If Plaintiffs succeed in obtaining an injunction requiring use of the HB 1 map for the November 2026 general election, the practical effect would be to nullify the Missouri Supreme Court's judgment in *von Glahn v. Hoskins* and prevent the referendum Proposed-Intervenors sponsored and defended from having any meaningful effect. The referendum would become moot as a practical matter—even if voters rejected HB 1, the election would already have been conducted under the HB 1 map which is "not the law and has never been the law." Under Missouri law, it "shall take effect when approved by a majority of the votes cast thereon, and not otherwise." Mo. Const. Art. III Sec. 52(b).

This impairment is direct and substantial. "The requirement of [Rule 24(a)(2)] is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528, 538 n.10 (1972). Proposed Intervenors certainly clear this bar.

D. Existing Defendants Cannot Adequately Represent Proposed Intervenors' Interests.

The record speaks for itself. The same day that Plaintiffs sued Defendants, State of Missouri and Secretary of State Hoskins in this Court, their counsel was joining the Defendants at the Supreme Court of the United States seeking a stay of the judgment they challenge in this Court. At every stage of the related prior state and federal proceedings, these defendants have opposed the referendum and the positions Proposed Intervenors would defend here.

The Secretary of State *opposed* PNP's referendum petition and issued a certificate of insufficiency on August 4, 2026, finding that the Missouri Constitution does not authorize a referendum on congressional redistricting. The Secretary vigorously defended his certification at the trial court and Missouri Supreme Court.

Then Attorney General filed an application for a stay of the Missouri Supreme Court's decision with the Missouri Supreme Court on September 3, 2026—the same day the decision was issued—which was denied on September 4, 2026. The Secretary is now asking the United States Supreme Court to vacate the judgment he would nominally defend in this proceeding. The Secretary has filed an emergency stay application in *Hoskins v. von Glahn*, No. 26A304, seeking to block the Missouri Supreme Court's ruling. The Republican National Committee, National Republican Congressional Committee, and Missouri Republican State Committee, represented by the same counsel as Plaintiffs here, have filed a brief supporting the Secretary's application. A party who is simultaneously asking a higher court to vacate a judgment cannot be expected to defend that judgment in this Court.

The record here raises substantial questions about whether this lawsuit presents the "honest and actual antagonistic assertion of rights" upon which judicial power depends. *United States v. Johnson*, 319 U.S. 302, 305 (1943); *see also Lord v. Veazie*, 49

U.S. (8 How.) 251, 255 (1850); *Hunt v. Roth*, 648 F.2d 1148, 1153 (8th Cir. 1981). The federal Complaint advances the same Elections Clause, Article I § 2, Equal Protection, and *Purcell* arguments that Plaintiffs' counsel raised—and that the Missouri Supreme Court unanimously rejected—as intervenors-respondents in *von Glahn*. Intervenor-Respondents there were the Missouri Republican Party, the Republican National Committee, and Republican Congressional Campaign Committee. They are fully aligned with Plaintiffs here— two of which are current and former Missouri Republican Party officials and two are current Republican candidates for Congress.

That counsel now represents new plaintiffs in federal court, against a defendant who has taken the same position as the plaintiffs. Indeed, on the same evening this Complaint was filed, Plaintiffs' counsel filed a brief at the United States Supreme Court in *Hoskins v. von Glahn*, No. 26A-304, captioned "Intervenors-Respondents' Brief in Support of Applicant's Emergency Application for Stay"—expressly supporting the Secretary's position. Counsel cannot credibly claim adversity to a party they are simultaneously supporting in another tribunal.

Meanwhile, the Attorney General's office, which is obligated to defend this lawsuit on behalf of the Secretary, and the Secretary himself, are before the Supreme Court seeking the identical relief Plaintiffs request here. The "Defendant" and his counsel at the Attorney General's office. should here  defend against the Plaintiffs' attach and present the Court with the arguments it needs to consider whether to enjoin Missouri law. But that defendant, represented by the Attorney General, simultaneously argues to this nation's highest court that the unanimous Missouri Supreme Court Ruling is "bizzarre" and "anti-democratic." They have asked the United States Supreme Court to enjoin enforcement of the law they should be defending here.

This structural conflict—where the nominal defendant's own counsel is aligned with the plaintiffs' objectives—further underscores the absence of genuine adversity. *See Nash v. Blunt*, 140 F.R.D. 400, 402 (W.D. Mo. 1992) (finding intervention "necessary to insure this court's jurisdiction" where parties "necessarily agreed on a wide variety of factual and legal issues," thereby "depriving the court of 'opposing parties representing adverse interests' as required by Article III"). These circumstances are detailed more fully in Proposed Intervenors' contemporaneously filed Motion to Dismiss. Regardless of the disposition of that motion, the absence of genuine adversity independently compels intervention: if neither Defendant will present a defense, Proposed Intervenors are the only parties who can ensure the adversarial presentation that Article III requires.

The October 2025 litigation reinforces the point. When the State sought to challenge the referendum, it sued von Glahn and PNP directly as the sole defendants, identifying them as the indispensable parties. *See Missouri Gen. Assembly v. von Glahn*, No. 4:25-CV-1535 (E.D. Mo.). Now, in the wake of an adverse ruling, new plaintiffs have filed suit against the Secretary as a nominal defendant—while the parties the State itself identified as the real adversaries are absent. And the proper federal avenue for reviewing the Missouri Supreme Court's judgment—28 U.S.C. § 1257 certiorari review by the Supreme Court—is already being actively pursued. *See Hoskins v. von Glahn*, No. 26A-304 (U.S.). Without Proposed Intervenors, no party will present a genuine defense of the Missouri Supreme Court's judgment in this parallel proceeding.

The existing defendants' interests are aligned with Plaintiffs' interests, not with Proposed Intervenors'. Where the government's interest diverges from that of a proposed intervenor, the inadequacy burden is easily met. *Trbovich*, 404 U.S. at 538 n.10. "[W]hen the party seeking intervention has the same ultimate objective as a party

to the suit, a party is adequately represented *only if* there is no showing of adversity of interest, collusion, or nonfeasance." *Barnett*, 317 F.3d at 787 (emphasis added). That showing is made here. The existing defendants' interests are different from Proposed Intervenors', and the harms Proposed Intervenors face are unique. Intervention as of right must be granted. *See Turn Key Gaming, Inc.*, 164 F.3d at 1082 (reversing denial of intervention).

## II. IN THE ALTERNATIVE, THE COURT SHOULD GRANT PERMISSIVE INTERVENTION UNDER RULE 24(b).

Even if the Court were to conclude that Proposed Intervenors are not entitled to intervention as of right, permissive intervention is warranted under Rule 24(b)(1)(B). That provision allows intervention when a party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The Court considers whether intervention will unduly delay or prejudice the adjudication of the original parties' rights. Fed. R. Civ. P. 24(b)(3). Permissive intervention is committed to the Court's sound discretion. *Bush v. Viterna*, 740 F.2d 350, 359 (8th Cir. 1984).

Proposed Intervenors satisfy this standard. The core question in this case is whether the Missouri Supreme Court's decision in *von Glahn v. Hoskins* comports with the United States Constitution. Proposed Intervenors were the prevailing parties in that decision and have colorable defenses that go to the heart of the case:

The U.S. Supreme Court has repeatedly held that referenda on congressional redistricting are permissible under the Elections Clause. *Ohio ex rel. Davis v. Hildebrandt*, 241 U.S. 565 (1916); *Moore v. Harper*, 600 U.S. 1, 25–26 (2023); *Arizona State Legislature v. Arizona Indep. Redistricting Comm'n*, 576 U.S. 787 (2015).

The Missouri Constitution's referendum provision, Article III, Section 49, authorizes a referendum on "any act of the general assembly." The Missouri Supreme Court unanimously held this includes congressional redistricting legislation—a straightforward application of the constitutional text.

Intervention will not delay or prejudice the existing parties. To the contrary, Proposed Intervenors' participation will assist the Court in fully and fairly resolving the constitutional questions presented. PNP and von Glahn possess unique knowledge of the referendum petition process, the state court proceedings, and the practical implications of the relief Plaintiffs seek. Without their participation, the Court would lack the perspective of the parties most directly affected by the outcome.

## III. THE COURT SHOULD GRANT THIS MOTION ON AN EXPEDITED BASIS.

The posture of this case supports expedited resolution of this Motion. Plaintiffs have filed a motion for a temporary restraining order and preliminary injunction and a motion to expedite.

Proposed Intervenors—as the prevailing parties in the underlying state court decision—should be heard before this Court rules on any request for emergency injunctive relief. A federal district court likely lacks the authority to enjoin a state supreme court's unanimous judgment, and it certainly should not do so without hearing from the parties who obtained it. Without Proposed Intervenors, the present parties are unlikely to have any adversity between them. Profound jurisprudential and practical concerns should require the Court to permit intervention before resolving Plaintiffs' request for extraordinary relief—overriding a state supreme court ruling on the eve of an election.

## CONCLUSION

For the foregoing reasons, Proposed Intervenor-Defendants People Not Politicians and Richard von Glahn respectfully request that this Court grant their Motion to Intervene as Defendants and permit them to participate in these proceedings, including any hearings on Plaintiffs' motion for a temporary restraining order and preliminary injunction.

Respectfully submitted,

**STINSON LLP**

*/s/ Charles W. Hatfield*
Charles W. Hatfield, No. 40363
Jeremy A. Root, No. 59451
Alexander C. Barrett, No. 68695
Alixandra S. Cossette, No. 68114
Greta M. Bax, No. 73354
230 W. McCarty Street
Jefferson City, Missouri 65101
Phone: (573) 636-6263
Facsimile: (573) 636-6231
chuck.hatfield@stinson.com
jeremy.root@stinson.com
alexander.barrett@stinson.com
alix.cossette@stinson.com
greta.bax@stinson.com

*Attorneys for Proposed Intervenor-Defendants People Not Politicians and Richard von Glahn*

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2026, I electronically filed the foregoing using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Charles W. Hatfield*
Charles W. Hatfield