**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CONGRESSMAN ROBERT "BOB" ONDER, RICHARD "RICK" BRATTIN, PATRICIA "PAT" THOMAS, and DEBRA HAVENS, | ) | |
| Plaintiffs, | ) | Case No. 4:26-cv-01424-SRC |
| v. | ) | |
| STATE OF MISSOURI and DENNY HOSKINS, in his official Capacity as Missouri Secretary of State, | ) | |
| Defendants. | ) | |

**PLAINTIFFS' SUBSTITUTE MEMORANDUM IN OPPOSITION TO PROPOSED INTERVENOR-DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Congressman Bob Onder, Rick Brattin, Pat Thomas, and Debra Havens ("Plaintiffs") submit this substitute memorandum in opposition to the proposed Motion to Dismiss (Doc. 12-4) filed by Proposed Intervenor-Defendants People Not Politicians ("PNP") and Richard von Glahn (collectively, "Proposed Intervenors") due to an inadvertent typographical error.[1] Plaintiffs address each of Proposed Intervenors' nine grounds below, mindful that courts in this district have treated an argument left wholly unaddressed in an opposition as abandoned. *Huskey v. Colgate-Palmolive Co.*, 486 F. Supp. 3d 1339 (E.D. Mo. 2020); *Graw v. Eli Lilly & Co.*, 821 F. Supp. 3d 981 (E.D. Mo. 2026)..

## STANDARD OF REVIEW

Proposed Intervenors' motion mixes jurisdictional grounds under Rule 12(b)(1) (Sections I through VII of their motion) with a merits challenge under Rule 12(b)(6) (Section IX), and the two are governed by different standards. On a Rule 12(b)(1) motion, a court may resolve the challenge on any of three bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Johnson v. United States*, 534 F.3d 958, 962 (8th Cir. 2008).

Intervenors' jurisdictional arguments rest entirely on the pleadings and matters of public record (the *Von Glahn* opinion and the parties' own filings). No party

[1] Plaintiffs take no position on Intervenors' Motion to Intervene.

has introduced contested extrinsic evidence, so this remains, in substance, a facial challenge in which the well-pleaded allegations of the Complaint are taken as true.

On the Rule 12(b)(6) merits challenge, a complaint survives if it pleads "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Graw*, 821 F. Supp. 3d 981. The Court considers the plausibility of each claim as a whole, not each individual allegation in isolation, *A.O.A. v. Rennert*, 350 F. Supp. 3d 818 (E.D. Mo. 2018), drawing on "judicial experience and common sense." *Litig. Laws., Pro. Ass'n v. Harbison*, 797 F. Supp. 3d 977 (E.D. Mo. 2025).

## ARGUMENT

### I. CASE IS NOT COLLUSIVE OR FEIGNED

Proposed Intervenors argue this case is a "collusive, feigned" suit under 28 U.S.C. § 1359 and Article III because Plaintiffs' counsel also filed a brief supporting the Secretary's position in the Supreme Court stay proceeding. Mot. to Dismiss (Doc. 12-4) at 2-5. That argument misunderstands what makes a suit collusive. The collusion doctrine polices cases in which the defendant already has the power to give the plaintiff everything it wants and simply declines to contest the case, manufacturing a judgment neither party actually disputes. *Chicago & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339 (1892), and *Muskrat v. United States*, 219 U.S. 346 (1911), both involved exactly that: a defendant who could have simply conceded and a controversy that existed only because the parties agreed to litigate it. That is not

this case. While he may agree with Plaintiffs' position, the Secretary cannot unilaterally give Plaintiffs the relief they seek. He is bound by the *Von Glahn* judgment and may not lawfully use the HB 1 map for the November 3, 2026 general election unless and until this Court, not the Secretary, orders otherwise. Compl. (Doc. 1) ¶¶ 33-34; Mot. to Dismiss (Doc. 12-4) at 2 (describing the Missouri Supreme Court's order as binding on "the secretary and all of those acting in concert with him"). A defendant who lacks the power to grant the requested relief without a court order cannot collude to manufacture one; the very fact that Plaintiffs need an injunction from this Court, rather than a stipulation from the Secretary, is proof the dispute is real.

Proposed Intervenors' remaining collusion argument reduces to the fact that Plaintiffs' counsel also represents other, aligned interests in a separate proceeding. Imputing collusion from shared counsel would mean that any lawyer who represents more than one client with overlapping interests across different matters has thereby destroyed the case-or-controversy status of every one of those matters. That rule would functionally penalize the choice of counsel itself.

Proposed Intervenors' two remaining authorities confirm this. *United States v. Johnson* is the paradigm of an actually collusive suit: the nominal plaintiff sued in a fictitious name at the defendant's request, never employed or met the attorney who filed the complaint in his name, did not know who paid the filing fee, and learned the amount of the judgment sought against him from a newspaper — a proceeding "conducted under the domination of only one of them." 319 U.S. 302, 305 (1943).

Nothing resembling that exists here: Plaintiffs retained their own counsel, control this litigation, and bear its costs and risks. *Whole Woman's Health v. Jackson* held that state-court clerks and judges are not proper Article III defendants because they are neutral adjudicators who, unlike executive officials, do not themselves enforce state law. 595 U.S. 30, 39-40 (2021). The Secretary is exactly the kind of executive enforcer *Whole Woman's Health* distinguishes from a passive clerk or judge: administering the November 3, 2026 election, including which map to use, is an ordinary exercise of his executive office. *Whole Woman's Health*'s holding that passive adjudicators are not proper defendants says nothing about whether a suit against the official who actually enforces the law presents a genuine controversy — it confirms that such a suit does.

Federal courts applying this same logic have reached the same result on directly analogous facts. In *McKusick v. City of Melbourne*, the Eleventh Circuit held a suit was not "ill-defined, hypothetical, abstract, friendly, feigned, or collusive" where the defendant city enforced a state-court injunction only because it believed itself obligated to do so until a court instructed it otherwise— (even though the city had no independent interest in defending the injunction) precisely because the city lacked unilateral power to cease enforcement without a court order. 96 F.3d 478 (11th Cir. 1996).

## II. THE PENDING SUPREME COURT STAY APPLICATION DOES NOT REQUIRE DISMISSAL, AND AT MOST MOOTS PART OF ONE CLAIM.

A pending emergency stay application in a different case, between different parties in a different procedural posture, does not divest this Court of jurisdiction

over an independent federal action. *Hoskins v. von Glahn*, No. 26A-304 (U.S.), is an application to stay enforcement of the *Von Glahn* judgment pending the Secretary's anticipated petition for certiorari, on two independent grounds: (1) that requiring the State to revert to the 2022 map after the August 4, 2026 primary violates Article I, Section 2 and the Equal Protection Clause, and (2) that the Missouri Supreme Court displaced the General Assembly's redistricting authority without the clear statement the Elections Clause requires. A discretionary stay ruling on those grounds does not require dismissal of this separate action; at most, it affects whether particular relief is still needed, not whether this Court has power to decide the case.

The two grounds track this Complaint's two constitutional theories closely enough that the Court's disposition of the stay application may bear on which of Plaintiffs' claims remains live, but not on this Court's jurisdiction to decide either. If the Supreme Court stays enforcement only on the map-timing ground (Article I, Section 2 and Equal Protection), that would grant Plaintiffs the practical relief their Article I, Section 2 and Equal Protection claim seeks only so long as the stay remains in place. Moreover, the Elections Clause claim, addressed to a distinct legal question (whether Missouri's referendum provision may reach congressional redistricting at all absent a clear statement) would remain live regardless. If the Supreme Court stays enforcement on both grounds, Plaintiffs might receive practical relief, but again only so long as the stay remains in place. If the Supreme Court later lifts the stay for whatever reason, Plaintiffs would no longer have practical relief and could seek to

move forward on their live claims in this Court In no scenario does the pending application require dismissal of an otherwise-live; it at most may narrow or delay.

"The doctrine of abstention [] is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it." *Colorado River Conservation District v. United States*, 424 U.S. 800, 813 (1976) quoting *County of Allegheny v. Frank Mashuda Co.,* 360 U.S. 185, 188-189 (1959). The decision of the Supreme Court on a stay application is not the same as a concurrent merits case on the same issues pending in another district court as was the case in *Colorado River*. *Id.* at 818-9. There is no chance of a "piecemeal adjudication of [] rights". *Id.* at 819. Here, the abstention doctrine does not apply.

*Malliotakis* does not support Intervenors' position, and Justice Alito's concurrence explains why. The stay in that case rested on the All Writs Act, which authorizes relief only when "necessary to prevent a state court from so interfering with a federal court's consideration or disposition of a case as to seriously impair the federal court's flexibility and authority to decide that case." 146 S. Ct. at 811 (quoting *Atlantic Coast Line R. Co. v. Locomotive Engineers*, 398 U.S. 281, 295 (1970)). That stay protected the Supreme Court's own prospective appellate jurisdiction over the very litigation before it — the same parties, the same claims, on their way to the same Court via certiorari. Id. at 810-11. It is not, and does not purport to be, a holding that the mere pendency of one party's request for review displaces a distinct federal action by different plaintiffs raising claims the reviewing court has not decided. Here, Plaintiffs are strangers to *Hoskins v. Von Glahn*, No. 26A-304, just as they are

strangers to *Von Glahn v. Hoskins* itself, and their Article I, Section 2 and Equal Protection claims — arising from the primary-to-general map switch — are not before the Supreme Court in that stay application at all. Nor does Justice Alito's Purcell discussion aid Intervenors. He concluded the stay was *consistent* with Purcell precisely because it preserved the status quo and "eliminate[d] much of the uncertainty and confusion" that a mid-cycle change would otherwise cause, id. at 811 — the same logic that supports, rather than forecloses, Plaintiffs' request here to preserve the map already used to conduct Missouri's August 4 primary rather than impose a different one for the general election.

## III. THE *ROOKER-FELDMAN* DOCTRINE DOES NOT APPLY.

*Rooker-Feldman* is a narrow doctrine, confined to cases brought by state-court losers complaining of injuries caused by a state-court judgment and inviting a federal district court to review and reject that judgment. None of Plaintiffs meet that description. Plaintiffs were not parties to *Von Glahn v. Hoskins*, No. SC101805 (Mo. banc Sept. 3, 2026); Plaintiffs did not litigate, and could not have litigated, their personal claims as primary candidates and reassigned voters in that statutory proceeding under Section 116.200, RSMo.

More fundamentally, the *Von Glahn* court itself limited what it decided: "a single reason" for insufficiency : that Missouri's Constitution does not authorize a referendum on legislative redistricting and that "as a matter of law, this is the only reason preserved for this Court's review." *Von Glahn*, slip op. at 5 n.5. The court expressly held that any arguments the Secretary raised beyond that single certified

reason, "including claimed federal law violations," were "waived and abandoned" and "outside the scope of the secretary's authorized statutory review." *Id.* Nothing in the Article I, Section 2 or Equal Protection causes of action Plaintiffs bring here, which turn on facts particular to the August 4, 2026 primary and the reassignment of voters between the primary and general elections, appears anywhere in the *Von Glahn* opinion; the court had no occasion to address them and expressly disclaimed reaching "federal law violations" of any kind. Plaintiffs do not ask this Court to reverse, modify, or declare void the *Von Glahn* judgment on the single state-law ground it actually decided. They ask this Court to enjoin the Secretary, prospectively, from a distinct course of conduct — using a different map for the general election than the one used in the primary — on federal constitutional grounds the Missouri Supreme Court never reached. A claim resting on an injury and a legal theory the state court did not decide, and expressly declined to decide, falls outside *Rooker-Feldman*.

This conclusion follows directly from *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, which confines *Rooker-Feldman* to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments," and which itself recognized that the doctrine "has no application to a federal suit brought by a nonparty to the state suit." 544 U.S. 280, 284, 287 (2005) (citing *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994)). The Supreme Court confirmed this rule against the precise argument Proposed Intervenors make here in *Lance v. Dennis*: "The *Rooker–Feldman* doctrine does not bar actions by nonparties

to the earlier state-court judgment simply because, for purposes of preclusion law, they could be considered in privity with a party to the judgment." 546 U.S. 459, 466 (2006) (per curiam). The Eighth Circuit has faithfully applied this rule. *Riehm v. Engelking*, 538 F.3d 952, 964-65 (8th Cir. 2008) (if a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court itself, *Rooker-Feldman* bars jurisdiction; but if the plaintiff asserts as a legal wrong an allegedly illegal act by an adverse party, it does not.) Plaintiffs' claims are squarely the latter: they challenge the Secretary's prospective conduct in implementing a particular map, not the correctness of *Von Glahn* itself. See also *Shelby Cnty. Health Care Corp. v. S. Farm Bureau Cas. Ins. Co.*, 855 F.3d 836, 840-41 (8th Cir. 2017) (*Rooker-Feldman* inapplicable where the federal plaintiff had no relationship to the state-court parties); *Sutter & Gillham PLLC v. Henry*, 146 F.4th 699 (8th Cir. 2025) (same, reaffirming the illegal-act-by-an-adverse-party distinction).

Proposed Intervenors' reliance on *In re Skyline Woods Country Club, LLC* does not survive scrutiny under this framework. The panel's *Rooker-Feldman* discussion there, in footnote 23, concluded that the doctrine applied to the actual state-court parties but did *not* apply to the non-party bank. 431 B.R. 830, 837 n.23 (B.A.P. 8th Cir. 2010). The panel's further observation that evidence of collusion "might dictate a different conclusion" was dictum: there was no evidence of collusion in that case, the panel articulated no standard for such an inquiry, and the panel's primary holding rested on res judicata under Nebraska law, not *Rooker-Feldman* at all. *Id.* A footnote's dictum in a bankruptcy appellate panel decision cannot expand a doctrine

the Supreme Court has twice narrowed, and no published Eighth Circuit opinion has adopted the collusion-based extension Proposed Intervenors ask this Court to apply, based on choice of counsel, for the first time here.

## IV. NEITHER *PURCELL* NOR *YOUNGER* BARS THE RELIEF PLAINTIFFS SEEK.

### A. *Purcell* Favors Plaintiffs, Not Dismissal.

The *Purcell* principle counsels against federal courts changing election rules close to an election, out of concern for voter confusion. *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006). Proposed Intervenors invoke Purcell to argue that this Court should not disturb the *Von Glahn* judgment. Mot. to Dismiss (Doc. 12-4) at 7-9. But it is the Missouri Supreme Court's September 3, 2026 decision (issued after the August 4, 2026 primary was already conducted under the HB 1 map) that changed the rules mid-election. Plaintiffs' requested injunction would preserve the map already used to nominate candidates and cast primary ballots, not disrupt it. Purcell's rationale, preventing court-ordered, late-breaking changes to election administration, supports the relief Plaintiffs seek; it is not a basis to dismiss their claim for that relief.

*Growe v. Emison* does not require deference here. *Growe* held that a federal court errs when it affirmatively obstructs, or substitutes *its own plan* for, a State's *timely and still-pending* effort to reapportion legislative or congressional districts, because "a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." 507 U.S. 25, 34 (1993). That concern is not present here. The Missouri Supreme Court's proceeding concluded with a final decision on September 3, 2026, and Plaintiffs ask this Court to enjoin nothing

the state court is still doing. Indeed, *Growe* itself instructs that once a state court's final order issues, the federal court's role thereafter is limited "to entertaining ... claims relating [] to the extent those claims challenged the state court's plan." Id. at 35-36. Plaintiffs do not challenge *von Glahn* decision and seek relief on distinct federal constitutional claims — arising from the switch between the primary and general elections — that the Missouri Supreme Court expressly declined to reach. *Von Glahn*, slip op. at 5 n.5. *Growe*'s deference rule protects an ongoing, unresolved state redistricting process from premature federal interference; it does not immunize an executive officer's post-judgment conduct from a live federal claim the state court never addressed. *See also supra* Part II (discussing *Malliotakis*)

**B. *Younger* Abstention Does Not Apply Because There Is No Ongoing State Proceeding.**

*Younger* abstention requires, among other things, an ongoing state judicial proceeding. *Von Glahn* is a final judgment of Missouri's highest court; no further state-court proceeding is pending. The only proceeding Proposed Intervenors identify as "ongoing" is the Secretary's stay application before the United States Supreme Court: a federal proceeding, not a state one. *Younger* is concerned with federal-court interference with pending state prosecutions and state civil proceedings; it has no application to a separate federal action merely because a federal appellate remedy (certiorari review of a state judgment) happens to be pending in a different case.

Huffman itself confirms the point rather than undermining it. The exhaustion requirement *Huffman* announced runs to "state appellate remedies" — that is, appeal through the state's own court system — because allowing earlier federal intervention

would let a district court "substitute itself for the State's appellate courts." 420 U.S. 592, 608-09, 613-14 (1975). A losing state litigant "may... seek review in this Court of any federal claim properly asserted in and rejected by state courts" only after the state process, including state appellate review, concludes. *Id.* at 607-08. *Plouffe* and *Tony Alamo Christian Ministries* are consistent: both applied *Younger* where a state proceeding remained pending in the state courts themselves — an attorney disciplinary proceeding not yet concluded, and juvenile-dependency appeals still pending in Arkansas's own appellate courts, respectively. *Plouffe v. Ligon*, 606 F.3d 890, 892-93 (8th Cir. 2010); *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1250-51 (8th Cir. 2012). No state appeal of any kind remains available or pending here.

## V. THE ANTI-INJUNCTION ACT DOES NOT BAR RELIEF AGAINST THE SECRETARY.

The Anti-Injunction Act, 28 U.S.C. § 2283, restricts federal injunctions that "stay proceedings in a State court." Plaintiffs do not ask this Court to stay any proceeding in any Missouri court, and no Missouri court proceeding is pending. Plaintiffs ask this Court to enjoin a state executive officer, the Secretary, from taking a specific administrative action — implementing a particular congressional map for the general election — on independent federal constitutional grounds never presented to any Missouri court.

Proposed Intervenors cite *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers* for the rule that § 2283's prohibition "cannot be evaded by addressing the order to the parties." 398 U.S. 281, 287 (1970). That is an accurate

statement of the rule, but the case applying it is materially different. There, the federal injunction ran between the same two litigants who had just finished fighting the underlying dispute in state court, and its entire practical effect was to stop the railroad from "availing itself of the benefits of" a state-court injunction the state court had just issued in that same dispute. *Id.* at 287-88. Here, Plaintiffs were never parties to *Von Glahn*, and the relief they seek would not nullify anything the Missouri Supreme Court ordered as between the parties to that case; it would direct the Secretary's future conduct on independent federal claims those parties never raised. The concern *Atlantic Coast Line* addresses is not present when a different plaintiff, on a different claim, asks a federal court to direct an executive officer's future conduct.

Two further, independent lines of authority confirm that § 2283 does not reach this case at all. First, the "strangers doctrine": a state-court proceeding does not bind a stranger to it, and § 2283's predecessor did not bar a federal injunction against a state officer's future enforcement of a statute merely because a different party had already obtained a state-court mandamus ordering that same enforcement. *Hale v. Bimco Trading*, 306 U.S. 375, 378 (1939) (rejecting the argument that a state mandamus proceeding "bound the independent suitor in the federal court as though he were a party to the litigation in the state court," because "this, of course, is not so"); *accord Imperial Cnty., Cal. v. Munoz*, 449 U.S. 54, 59 (1980) (remanding to determine whether federal plaintiffs were "strangers" to the state proceeding, which would take the case outside § 2283 entirely). Plaintiffs were strangers to *Von Glahn*

in exactly this sense: they were not parties, did not participate, and are not bound by it.

Second, and independently, the Eighth Circuit has squarely held that § 2283 does not reach state administrative or executive action at all, regardless of any party-identity question. *Entergy, Arkansas, Inc. v. Nebraska*, 210 F.3d 887, 899 (8th Cir. 2000) (§ 2283's "plain language refers only to injunctions issued by federal courts to stay proceedings in a State court," and "every circuit to have addressed th[e] question" agrees the statute does not reach administrative or executive proceedings). Federal courts within the Eighth Circuit have accordingly enjoined Missouri and other state election officials from implementing congressional maps without ever treating § 2283 as a barrier, because such injunctions restrain executive conduct rather than any state court. See, e.g., *Preisler v. Sec'y of State of Mo.*, 341 F. Supp. 1158 (W.D. Mo. 1972) (three-judge court permanently enjoining the Missouri Secretary of State from conducting elections under an unconstitutional congressional redistricting act).

## VI. RES JUDICATA AND COLLATERAL ESTOPPEL DO NOT BAR THIS ACTION.

Issue preclusion requires that the issue was actually litigated and determined by a valid, final judgment. Proposed Intervenors assert that "the Missouri Supreme Court addressed these federal constitutional issues on the merits." Mot. to Dismiss (Doc. 12-4) at 11. The *Von Glahn* opinion says otherwise. The court expressly limited its review to "the single reason" the Secretary certified — a pure question of Missouri constitutional law — and held that any other arguments, "including claimed federal law violations," had been "waived and abandoned" and were "outside the scope of the

secretary's authorized statutory review." *Von Glahn*, slip op. at 5 n.5 ("This includes claimed federal law violations or whether the congressional redistricting in HB 1 should or must remain in place through the 2026 election cycle, which are also outside the scope of the secretary's authorized statutory review in section 116.120.1.")

A court that expressly declines to reach an issue has not "addressed" that issue "on the merits" for issue-preclusion purposes, whatever a losing intervenor-respondent argued in briefing below. That defeats collateral estoppel on Plaintiffs' Article I, Section 2 and Equal Protection claims outright, since those theories (which depend on facts about the August 4, 2026 primary that postdate the petition proceedings) do not appear anywhere in the opinion.

This follows a settled rule, not an exception to one. For an issue to be "actually litigated," it must have been "raised, contested, and submitted for determination" in the prior proceeding — "an issue lurking in the record but not raised or decided is not actually litigated." *Fofana v. Mayorkas*, 4 F.4th 668, 674 (8th Cir. 2021) (citing *Cromwell v. Sac Cnty.*, 94 U.S. 351, 356 (1876)). And when a court expressly addresses only one ground and passes over another, preclusion attaches only to the ground actually addressed. *Fairbrook Leasing, Inc. v. Mesaba Aviation, Inc.*, 519 F.3d 421, 429-30 (8th Cir. 2008).

Neither of *Taylor v. Sturgell*'s narrow "control" and "proxy" categories applies. A nonparty "assumed control" over litigation only if she had "the opportunity to present proofs and argument" such that she effectively had her own "day in court" even without being a named party. 553 U.S. 880, 895 (2008) (citation and internal

quotation marks omitted). The "proxy" category applies only when a nonparty later sues "as the designated representative of a person who was a party to the prior adjudication" or as that party's agent. *Id.* Nothing in the record shows that Congressman Onder, Mr. Brattin, Ms. Thomas, or Ms. Havens personally directed, funded, or had any opportunity to control the litigation strategy in *Von Glahn*, and none of them sues here as the designated representative or agent of the Missouri Republican Party, the RNC, or the NRCC. They are individuals asserting their own, personal federal constitutional claims arising from their own status as primary candidates and reassigned voters, represented by counsel who also happened to represent other, formally distinct entities in a different case.

*Taylor v. Sturgell* itself forecloses the precise theory Proposed Intervenors advance. There, the D.C. Circuit had found preclusion in part because the second plaintiff had "engaged the same attorney" who represented his friend in the earlier suit; the Supreme Court unanimously rejected that reasoning, holding that hiring the same lawyer establishes neither of the two conditions adequate representation requires. 553 U.S. at 899-900.

## VII. PLAINTIFFS HAVE ARTICLE III STANDING.

To establish standing, a plaintiff must show an injury in fact that is concrete, particularized, and actual or imminent, caused by the defendant's conduct, and redressable by the relief sought. *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Congressman Onder and Mr. Brattin were nominated by, and campaigned to, the electorate in the HB 1 congressional districts, and prevailed in the August 4, 2026

primary conducted under that map. Compl. (Doc. 1) ¶¶ 2, 4, 102-04. Ms. Thomas and Ms. Havens are registered voters who cast, or were positioned to cast, primary ballots under the HB 1 map and now face reassignment to different districts, with different candidates, for the general election. Compl. ¶¶ (Doc. 1) 7-10, 104. Each of these injuries is concrete and particularized to the individual plaintiff, is caused directly by the Secretary's anticipated implementation of the 2022 map rather than the HB 1 map for the general election, and would be redressed by the injunction Plaintiffs seek.

Proposed Intervenors argue Plaintiffs "assumed the risk" that HB 1 might never take effect because the referendum petition was pending when Congressman Onder and Mr. Brattin chose to run in the HB 1 districts. Mot. to Dismiss (Doc. 12-4) at 16. A candidate or voter does not forfeit Article III standing to challenge a change in the governing map merely because litigation over that map's validity was pending; if it were otherwise, no one could ever challenge the outcome of pending election litigation once it concluded, since the pendency of the litigation would always have been foreseeable. It strains credulity to argue that a candidate forfeits his right to challenge the rules of his election merely by filing in his then-applicable districts.

This follows directly from the settled distinction between standing and the merits. "Standing in no way depends on the merits of the plaintiff's contention that particular conduct is illegal." *Warth v. Seldin*, 422 U.S. 490, 500 (1975). The Supreme Court squarely rejected an analogous "self-inflicted injury" argument in *FEC v. Cruz*, holding that an injury remains fairly traceable to a challenged legal requirement even where the plaintiff's own choice, made with full knowledge of the risk, exposed him

to it — the relevant line is between manufacturing an injury that is not certainly impending and voluntarily subjecting oneself to a provision that directly inflicts a real one. 596 U.S. 289, 298-302 (2022) ("For standing purposes, we accept as valid the merits of appellees legal claims, so we must assume the loan-repayment limitation – including the 20-day rule – unconstitutionally burdens speech.") The Eighth Circuit has applied this rule on facts directly analogous to Proposed Intervenors' argument here: in *Atwood v. Peterson*, the defendant argued that the plaintiff's own choice, not the challenged conduct, caused his injury; the court held that argument "goes to the merits, not to standing," and proceeded to resolve it separately on a full merits record. 936 F.3d 835, 840 (8th Cir. 2019) (citing *Warth*, 422 U.S. at 500). Proposed Intervenors' "assumed the risk" argument is the same argument in different clothing, and belongs in the same place: the merits, not the jurisdictional threshold.

The premise of the "assumed the risk" argument is also weaker than Proposed Intervenors suggest. The *Von Glahn* opinion itself recounts that the Secretary chose to use and certify the HB 1 map through the August 4, 2026 primary while representing to a federal court, as early as December 2025, that he believed the referendum petition made HB 1 constitutionally deficient — delaying his certificate of insufficiency until the last statutorily permitted day despite having no apparent reason to incur the cost of full signature verification if he believed the map was already invalid. *Von Glahn*, slip op. at 12 n.8 (quoting *Mo. Gen. Assembly v. Von Glahn*, No. 4:25-CV-1535-ZMB, 2025 WL 3514277, at *2, *2 n.2 (E.D. Mo. Dec. 8, 2025)). Congressman Onder and Mr. Brattin ran, campaigned, and prevailed under

the map the State's own chief election official actually used to conduct the primary. Whatever legal risk the pending referendum created in the abstract, it was the Secretary's own conduct (not Plaintiffs' choices) that produced the map voters relied on in August.

## VIII. THE COMPLAINT STATES CONCRETE CLAIMS ON THE MERITS.

### A. The Elections Clause Requires a Clear Statement Before Displacing the General Assembly's Redistricting Authority, and Missouri's General Referendum Provision Does Not Supply One.

The Elections Clause is a "direct grant of authority" to state legislatures to regulate congressional elections, and other state actors, including state courts, may not use general or ambiguous state-law provisions to displace that authority absent a clear statement. *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 801, 814 (2015); *Carson v. Simon*, 978 F.3d 1051, 1060 (8th Cir. 2020) (per curiam); see also *Moore v. Harper*, 600 U.S. 1, 34, 36 (2023) (state law may not be used to "arrogate" the redistricting power the Constitution vests in state legislatures); *West Virginia v. EPA*, 597 U.S. 697, 723 (2022); *Gregory v. Ashcroft*, 501 U.S. 452, 460 (1991).

Article III, Section 49 of the Missouri Constitution is a general referendum provision that does not mention congressional redistricting and, unlike the Arizona provision at issue in *Arizona State Legislature*, does not expressly transfer congressional redistricting authority away from the General Assembly. Compl. (Doc. 1) ¶¶ 72-73. Proposed Intervenors respond that *Von Glahn* found "no meaningful difference" between Article III, Section 49 and the Ohio provision upheld in *Ohio ex*

*rel. Davis v. Hildebrandt*, 241 U.S. 565 (1916). Mot. to Dismiss (Doc. 12-4) at 13-14. *Hildebrandt* itself required that state law "make it clear" that a referendum reaches the legislature's congressional redistricting power, *Hildebrandt*, 241 U.S. at 567-68, and predates the one-person, one-vote line of cases and any dispute over a map change between a primary and general election in the same cycle. Whether that distinguishes *Hildebrandt* for purposes of a claim that this Court, rather than the Missouri Supreme Court, must independently decide is a live question at the pleading stage.

**B. The Article I, Section 2 and Equal Protection Claims Are Plausible on the Complaint's Allegations.**

Where state law makes the primary "an integral part of the procedure of choice," the right to have one's primary vote counted is itself protected by Article I, Section 2. *United States v. Classic*, 313 U.S. 299, 318 (1941). Missouri law makes the primary integral in exactly that sense: the primary winner "shall be the only candidate of that party for the office at the general election," subject to narrow exceptions absent here. §§ 115.339, 115.343, 115.363.3(1)-(3), .4, RSMo. Switching the governing congressional map between the primary and general elections, after voters in the HB 1 districts have already chosen their nominees, threatens to sever that "single instrumentality for choice of officers." *Smith v. Allwright*, 321 U.S. 649, 660 (1944); *Storer v. Brown*, 415 U.S. 724, 735 (1974) (the primary being "an integral part of the entire election process.")

The same change plausibly violates equal protection. Primary election procedures are state action subject to the Equal Protection Clause, *Bullock v. Carter*, 405 U.S. 134, 140-41 (1972), and "all who participate in the election are to have an equal vote... wherever their home may be" within the relevant district, *Gray v. Sanders*, 372 U.S. 368, 379 (1963). Voters like Ms. Thomas, reassigned to a new district for the general election after voting in the primary under the old one, are asked to choose among candidates they had no opportunity to evaluate, support, or oppose, while voters whose districts remain unchanged retain the full benefit of their primary vote. Compl. ¶¶ (Doc. 1) 84-89. That disparity is adequately pleaded to survive a motion to dismiss; Proposed Intervenors' response, that HB 1 "never took effect," Mot. to Dismiss (Doc. 12-4) at 18, assumes the answer to the very Elections Clause question the Complaint puts at issue, and is not a basis for dismissal on the pleadings.

## IX. A THREE-JUDGE PANEL IS NOT REQUIRED UNDER 28 USC 2284(a)

The Complaint does not challenge the constitutionality of the apportionment of Missouri into congressional districts which is the pre-requisite of 28 UC 2284(a). Instead, Plaintiffs seek a determination by this court on whether the referendum on HB 1 is in conflict with the elections clause and if the congressional districts under which the August primary elections were conducted must be used for the November general election. Plaintiffs Onder and Brattin ran for nomination in the HB 1 districts as part of the unified election for congress and those districts should not be changed at this time. Plaintiffs Thomas and Havens voted in the Republican primary

election in the HB 1 districts and should not have their votes negated and diluted by having to vote for entirely different candidates in different districts for the November general election.

The underlying validity of the apportionment is not before this Court as no party is challenging it. The Supreme Court in *Shapiro v. McManus* has noted that where no party disputes that a challenge is to the constitutionality of apportionment that a three-judge panel is not required. 577 U.S. 39, 43 (2015). Here that is not the case, as no party is challenging the apportionment but instead the scope of state referenda under the Elections Clause, Art. II, §1 cl. 4 and the validity of changing of districts in the midst of an election under Art. I, § 2 and the Equal Protection Clause of the Fourteenth Amendment. The only questions before this Court are outside the scope of 28 US 2284(a).

## X. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court deny the proposed Motion to Dismiss (Doc. 12-4) in its entirety.

Respectfully submitted,

**ELLINGER BELL LLC**

By: /s/ Marc H. Ellinger
Marc H. Ellinger, #40828(MO)
Stephanie S. Bell, #61855(MO)
Cole D. Bradbury, #62760(MO)
308 East High Street, Suite 300
Jefferson City, MO 65101
Telephone: (573) 750-4100
Facsimile: (314) 334-0450
E-mail: mellinger@ellingerlaw.com
E-mail: sbell@ellingerlaw.com
E-mail: cbradbury@ellingerlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on September 6, 2026, the foregoing Memorandum of Law in Opposition to Intervenor's Motion to Dismiss was filed electronically using the Court's electronic filing system, which sends notification to all counsel of record.

/s/ Marc H. Ellinger_____