**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| CONGRESSMAN ROBERT "BOB" ONDER,<br>RICHARD "RICK" BRATTIN,<br>PATRICIA "PAT" THOMAS, and<br>DEBRA HAVENS,<br><br>Plaintiffs,<br><br><br><br>v.<br><br>STATE OF MISSOURI and DENNY<br>HOSKINS, in his official Capacity<br>as Missouri Secretary of State, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 4:26-cv-01424<br>**ORAL ARGUMENT REQUESTED** |

Defendants.

**PROPOSED INTERVENOR-DEFENDANTS' MOTION TO**
**DISMISS COMPLAINT AND COMBINED MEMORANDUM IN SUPPORT**

# TABLE OF CONTENTS

INTRODUCTION .......... 3
ARGUMENT .......... 2
I. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE COMPLAINT IS A COLLUSIVE, FEIGNED CASE .......... 2
II. THE PENDING SUPREME COURT PROCEEDING INDEPENDENTLY REQUIRES DISMISSAL OR ABSTENTION .......... 5
III. THE ROOKER-FELDMAN DOCTRINE BARS THIS COURT FROM REVIEWING THE MISSOURI SUPREME COURT'S JUDGMENT .......... 6
IV. THE PURCELL PRINCIPLE BARS THE RELIEF PLAINTIFFS SEEK .......... 7
V. YOUNGER ABSTENTION BARS FEDERAL INTERFERENCE WITH ONGOING STATE PROCEEDINGS .......... 9
VI. THE ANTI-INJUNCTION ACT BARS THE REQUESTED RELIEF .......... 10
VII. RES JUDICATA AND COLLATERAL ESTOPPEL BAR RELITIGATION .......... 11
VIII. PLAINTIFFS LACK ARTICLE III STANDING .......... 12
IX. THE COMPLAINT FAILS ON THE MERITS .......... 13
A. The Elections Clause Does Not Bar State Referenda on Congressional Redistricting .......... 13
B. The Article I, § 2 and Equal Protection Claims Are Meritless .......... 14
CONCLUSION .......... 15

# TABLE OF AUTHORITIES

**Cases**

*Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 805 (2015) ....................... 14
*Atl. Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281 (1970) ............. 10
*Brown v. Sweeney*, 242 F.3d 374 (8th Cir. 2000) ..................................................................... 6
*Cleveland v. Chamberlain*, 66 U.S. (1 Black) 419 (1862)........................................................... 3
*Chicago & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339 (1892) ............................................ 2
*Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976) .................... 5
*Curb & Gutter District No. 37 v. Parrish*, 110 F.2d 902 (8th Cir. 1940)........................................ 3
*Emerald Pointe, LLC v. Taney Cnty. Missouri*, 78 F.4th 428 (8th Cir. 2023)............................. 11
*Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280 (2005) ................................. 11
*Growe v. Emison*, 507 U.S. 25 (1993) ................................................................................... 8, 9
*Hawke v. Smith*, 253 U.S. 221 (1920)....................................................................................... 14
*Hill v. Martin*, 296 U.S. 393 (1935)........................................................................................... 10
*Hoskins v. Von Glahn*, No. 26A-304 ........................................................................................... 1
*Huffman v. Pursue, Ltd.*, 420 U.S. 592 (1975) ............................................................................ 9
*Hunt v. Roth*, 648 F.2d 1148 (8th Cir. 1981) ............................................................................... 3
*In re Skyline Woods Country Club, LLC*, 431 B.R. 830 (B.A.P. 8th Cir. 2010......................... 6, 7
*Keene Corp. v. Cass*, 908 F.2d 293 (8th Cir. 1990)...................................................................... 6
*Knutson v. City of Fargo*, 600 F.3d 992 (8th Cir. 2010)............................................................... 6
*Lance v. Dennis*, 546 U.S. 459 (2006)........................................................................................... 7
*Maggard v. State*, 733 S.W.3d 411 (Mo. banc 2026) ................................................................. 12
*Malliotakis v. Williams*, 146 S. Ct. 809 (2026)...................................................................... 5, 7
*Merrill v. Milligan*, 142 S. Ct. 879 (2022)................................................................................... 7
*Miller v. Johnson*, 515 U.S. 900 (1995)........................................................................................ 9
*Mo. Gen. Assembly v. Von Glahn*, 2025 WL 3514277 (E.D. Mo. Dec. 8, 2025).......................... 8
*Moore v. Harper*, 600 U.S. 1 (2023)....................................................................................... 8, 13
*Muskrat v. United States*, 219 U.S. 346 (1911) ....................................................................... 2, 5
*Ohio ex rel. Davis v. Hildebrandt*, 241 U.S. 565 (1916) ......................................................... 8, 13
*Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1 (1987)........................................................................... 6
*Plouffe v. Ligon*, 606 F.3d 890 (8th Cir. 2010)............................................................................. 9
*Purcell v. Gonzalez*, 549 U.S. 1 (2006) .................................................................................... 5, 7
*State ex rel. Carroll v. Becker*, 45 S.W.2d 533 (Mo. banc 1932)................................................ 14
*Taylor v. Sturgell*, 553 U.S. 880 (2008)................................................................................. 11, 12
*Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245 (8th Cir. 2012).................................... 9
*United States v. Johnson*, 319 U.S. 302 (1943) ............................................................................ 3
*von Glahn v. Hoskins*, No. SC101805 ................................................................................ *passim*
*Williams v. Nottawa*, 104 U.S. 209 (1881) ................................................................................... 3
*Whole Woman's Health v. Jackson*, 595 U.S. 30 (2021)............................................................... 2

**Statutes**

28 U.S.C. § 1257.................................................................................................................... 6, 7
28 U.S.C. § 2283......................................................................................................................... 10
28 U.S.C. § 2284......................................................................................................................... 15

*Shapiro v. McManus*, 577 U.S. 39 (2015) .......... 15

**Other Authorities**

https://abc17news.com/politics/2026/05/15/missouri-senator-asks-boone-county-prosecutor-attorney-general-to-take-action-against-boone-county-clerk/?utm_source=chatgpt.com .......... 3
https://ballotpedia.org/Pat_Thomas .......... 3
https://missouri.gop/your-local-gop/ .......... 3
https://www.kshb.com/news/local-news/chiefs-fans-demonstrate-unity-as-missouri-legislature-approves-map-splitting-kansas-citys-districts?utm_source=chatgpt.com .......... 3
https://x.com/RickBrattin/status/2096232967718814154?s=20 .......... 3
Mo. Const. art. III, sec. 49 .......... 14
U.S. Const. art. III, § 2 .......... 2

## INTRODUCTION

On September 3, 2026, the Missouri Supreme Court unanimously held[1] in *von Glahn v. Hoskins*, No. SC101805, that the referendum petition on HB 1 was "legal, sufficient, and timely," that, under state law, HB 1 "never took effect", "has never been the law," and that the 2022 congressional districts are "the only valid congressional redistricting in effect." Slip op. at 12–13. The court enjoined the Secretary of State from implementing the HB 1 districts. *Id.* at 13.

The next day, the Missouri Supreme Court denied the Secretary's motion for a stay. Hours later, Plaintiffs filed this federal complaint. The hallmarks of collusion are unmistakable. Plaintiffs' counsel—Ellinger Bell LLC—is the same firm that represented the Republican National Committee, National Republican Congressional Committee, and Missouri Republican State Committee as intervenors-respondents in the state court case. The federal complaint advances the identical Elections Clause, Article I § 2, Equal Protection, and *Purcell* arguments that counsel raised—and lost—in state court. And the nominal defendant, Secretary Hoskins, publicly agrees with Plaintiffs: he lost in state court, was denied a stay, and has sought an emergency stay from the United States Supreme Court.

Indeed, after filing this Complaint, Plaintiffs' counsel filed a brief at the Supreme Court in *Hoskins v. Von Glahn*, No. 26A-304, *supporting* Secretary Hoskins's emergency stay application. The same attorneys are thus simultaneously (a) suing Secretary Hoskins as a nominal defendant in this Court, and (b) supporting Secretary Hoskins's position at the Supreme Court—advancing the same legal theories, seeking the same practical result. Justice Kavanaugh has ordered a response by September 7, 2026, and a reply by September 8. The proper federal avenue for reviewing the

[1] All joined the main opinion—there were no concurrences indicating that any individual judge disagreed with the reasoning used to reach the conclusion.

Missouri Supreme Court's judgment—28 U.S.C. § 1257 certiorari review—is already being actively pursued.

For a host of reasons discussed below, this case should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

## ARGUMENT

### I. THIS COURT LACKS SUBJECT MATTER JURISDICTION BECAUSE THE COMPLAINT IS A COLLUSIVE, FEIGNED CASE

The Constitution limits federal judicial power to actual "Cases" and "Controversies" between genuinely adverse parties. U.S. Const. art. III, § 2. Congress has codified this requirement: "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. Where a lawsuit is collusive—where the parties share a common objective and have manufactured a dispute—the case must be dismissed because it does not present the "honest and actual antagonistic assertion of rights" upon which judicial integrity depends. *Chicago & Grand Trunk Ry. Co. v. Wellman*, 143 U.S. 339, 345 (1892); *see also Whole Woman's Health v. Jackson*, 595 U.S. 30, 40 (2021).

The Supreme Court has long enforced these requirements with vigor. In *Muskrat v. United States*, 219 U.S. 346, 361 (1911), the Court held that "judicial power . . . is the right to determine actual controversies arising between adverse litigants," and that an attempt to obtain a judicial declaration is not a "case" or "controversy" where the defendant "has no interest adverse to the claimants." As the Court explained: "It never was the thought that, by means of a friendly suit, a party beaten in the legislature could transfer to the courts an inquiry as to the constitutionality of the legislative act." *Id.* (quoting *Wellman*, 143 U.S. at 345). In *United States v. Johnson*, 319 U.S.

302, 305 (1943), the Court vacated a judgment where a landlord had controlled a tenant's lawsuit, holding that the suit was "collusive because it is not in any real sense adversary."

The rule against collusive suits has deep roots. In *Lord v. Veazie*, 49 U.S. (8 How.) 251, 255 (1850), the Supreme Court condemned suits where parties share a common interest and manufacture a dispute as "an abuse which courts of justice have always reprehended." *See also Cleveland v. Chamberlain*, 66 U.S. (1 Black) 419, 426 (1862). The Eighth Circuit has applied these principles. *Curb & Gutter District No. 37 v. Parrish*, 110 F.2d 902, 907 (8th Cir. 1940); *Hunt v. Roth*, 648 F.2d 1148, 1150 (8th Cir. 1981) ("Article III requires the existence of a case or controversy between two genuinely adverse parties"). The duty to police collusion is mandatory: "it is the duty of the circuit court, on its own motion, as soon as the collusive character of the case is shown, to stop all further proceedings and dismiss the suit." *Williams v. Nottawa*, 104 U.S. 209, 211 (1881).

The collusion here is unmistakable: Plaintiffs' counsel—Ellinger Bell LLC—is the same law firm that represented the Republican National Committee, National Republican Congressional Committee, and Missouri Republican State Committee as intervenors-respondents in *von Glahn v. Hoskins* before the Missouri Supreme Court. Plaintiffs are Republican candidates[2] and party leaders[3] who supported the Secretary's position throughout. They are in privity with the

[2] Mr. Brattin *voted* for HB 1 and has been defending it alongside the Secretary for months. *See, e.g.*, https://www.kshb.com/news/local-news/chiefs-fans-demonstrate-unity-as-missouri-legislature-approves-map-splitting-kansas-citys-districts?utm_source=chatgpt.com; https://abc17news.com/politics/2026/05/15/missouri-senator-asks-boone-county-prosecutor-attorney-general-to-take-action-against-boone-county-clerk/?utm_source=chatgpt.com. Just today, he praised the Secretary's ongoing efforts to use HB 1. *See* https://x.com/RickBrattin/status/2096232967718814154?s=20.

[3] Ms. Havens is the Chair of the Republican Party in Maries County. *See* https://missouri.gop/your-local-gop/. Ms. Thomas has served as Treasurer and Secretary of the Missouri Republican Party. *See* https://ballotpedia.org/Pat_Thomas.

Intervenors in *Von Glahn* and seek the same result: continued use of the HB 1 map, despite it not being a law. The nominal defendant—Secretary Hoskins—agrees with Plaintiffs. *He has agreed to entry of a TRO enjoining a Missouri Supreme Court decision*. The Complaint advances identical arguments that Ellinger Bell LLC raised—and the Missouri Supreme Court unanimously rejected—in the state court proceeding. *Compare* Compl. ¶¶ 50–73, 74–86, 87–96, 97–109, *with* Intervenors-Respondents' Brief at 14–52. The same attorneys are simultaneously supporting the Secretary at the Supreme Court. Ellinger Bell LLC's September 4, 2026 brief in *Hoskins v. Von Glahn*, No. 26A-304, explicitly supports the Secretary's stay application. The Complaint was filed as "related" to *Missouri General Assembly v. Von Glahn*, No. 4:25-CV-1535-ZMB—a lawsuit the Secretary himself filed in October 2025 pressing identical Elections Clause arguments. Plaintiffs' counsel filed an amicus brief (on behalf of the Missouri Republican Party) *supporting* the Secretary in that prior action. *See* Nov. 14, 2025, Amicus Br., Case No. 4:25-CV-1535-ZMB. The Complaint explicitly targets the *Von Glahn* ruling, seeking the exact relief the Missouri Supreme Court denied. The Missouri Attorney General's office is obligated to defend this lawsuit while simultaneously serving as counsel for the Secretary before the Supreme Court—seeking the same relief Plaintiffs request here. This structural conflict is yet another hallmark of a non-adversarial proceeding.

This is a textbook case of manufactured litigation that Article III and 28 U.S.C. § 1359 forbid. Like the friendly suit condemned in *Wellman*, 143 U.S. at 345, this action is an attempt by parties "beaten in the legislature"—or, more precisely, beaten in the state's highest court—to "transfer to the courts an inquiry as to the constitutionality of the legislative act." Like the landlord in *Johnson*, Ellinger Bell LLC orchestrated this federal action after losing in state court, naming a

nominal adversary who shares their objective. And as in *Muskrat*, the nominal defendant "has no interest adverse to the claimants." 219 U.S. at 361. The Court should dismiss this case as collusive.

## II. THE PENDING SUPREME COURT PROCEEDING INDEPENDENTLY REQUIRES DISMISSAL OR ABSTENTION

28 U.S.C. § 1257(a) vests the Supreme Court with jurisdiction to review final judgments of a State's highest court. The Secretary's pending emergency application in *Hoskins v. Von Glahn*, No. 26A-304, invokes that jurisdiction and seeks review of the Missouri Supreme Court's judgment. The Intervenors in that case—represented by Plaintiffs' counsel—fully support the stay request. This Court cannot serve as an alternative appellate forum for the same alleged federal claims.

The existence of parallel Supreme Court proceedings weighs heavily in favor of abstention under *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976). The Supreme Court is considering the same questions: the validity of the Missouri Supreme Court's judgment, the Elections Clause, Article I § 2, Equal Protection, and the feasibility of implementing a different map. Justice Kavanaugh has ordered a response by September 7, 2026, and a reply by September 8. Proceeding here would invite duplicative litigation and conflicting rulings.

Any action by this Court risks creating the very conflicting orders that *Purcell v. Gonzalez*, 549 U.S. 1 (2006), warns against. A district-court injunction directing use of the HB 1 map while the Supreme Court considers whether to stay the Missouri Supreme Court's injunction *against* that map would create chaos for election officials, candidates, and voters.

The pending Supreme Court proceeding demonstrates an adequate alternative forum—the constitutionally designated forum—for Plaintiffs' federal claims. *See Malliotakis v. Williams*, 146 S. Ct. 809 (2026). Plaintiffs cannot bypass that proceeding by asking this Court to issue the relief the Supreme Court is considering.

This Court should dismiss the Complaint as an impermissible attempt to circumvent the Supreme Court's exclusive appellate jurisdiction. At minimum, this Court should stay proceedings pending the Supreme Court's resolution of the stay application.

## III. *ROOKER-FELDMAN* BARS THIS COURT FROM REVIEWING THE MISSOURI SUPREME COURT'S JUDGMENT

Federal courts, with the exception of the United States Supreme Court, lack appellate jurisdiction over state court proceedings. *Keene Corp. v. Cass*, 908 F.2d 293, 296 (8th Cir. 1990); 28 U.S.C. § 1257. A federal claim is "inextricably intertwined" with a state-court judgment "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 25 (1987) (Marshall, J., concurring). "Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Id.*

The Eighth Circuit has enforced this doctrine rigorously. *Rooker-Feldman* "forecloses indirect attempts to undermine state court decisions," *Brown v. Sweeney*, 242 F.3d 374 (8th Cir. 2000), and applies to claims for injunctive and declaratory relief. *Keene Corp.*, 908 F.2d at 297. "[A] party losing in state court is barred from seeking what in substance would be appellate review of the state judgment in a United States district court." *Knutson v. City of Fargo*, 600 F.3d 992, 998 (8th Cir. 2010). While the doctrine is typically limited to parties to a state court action, "[e]videce of collusion might dictate a different result." *In re Skyline Woods Country Club, LLC*, 431 B.R. 830, 837 n.23 (B.A.P. 8th Cir. 2010).

Every element is satisfied. This action was filed after the Missouri Supreme Court entered its judgment on September 3, 2026. The Complaint identifies that judgment as the source of Plaintiffs' alleged injury, Compl. ¶ 33, and every claim requires this Court to find that the Missouri

Supreme Court was wrong—that HB 1 did take effect, and that the 2022 districts should not govern the November 2026 election.

This is not a case where the *Lance v. Dennis*, 546 U.S. 459, 466 (2006), privity limitation has any force. Plaintiffs are represented by the identical counsel who represented the losing intervenors in the state court action, and the evidence of collusion is overwhelming. *See In re Skyline Woods*, 431 B.R. at 837 n.23. This lawsuit is, in every material respect, an appeal of the *von Glahn* judgment disguised as an original federal action. Only the United States Supreme Court has jurisdiction to review it. 28 U.S.C. § 1257.

## IV. THE *PURCELL* PRINCIPLE BARS THE RELIEF PLAINTIFFS SEEK

The Supreme Court has repeatedly held that federal courts should not alter election rules on the eve of an election. *Purcell v. Gonzalez*, 549 U.S. 1, 4–5 (2006) ("[c]ourt orders affecting elections, especially conflicting orders, can themselves result in voter confusion"). Justice Kavanaugh articulated a four-factor test for federal court intervention: relief should be denied unless "(i) the underlying merits are entirely clearcut in favor of the plaintiff; (ii) the plaintiff would suffer irreparable harm absent the injunction; (iii) the plaintiff has not unduly delayed bringing the complaint to court; and (iv) the changes in question are at least feasible before the election without significant cost, confusion, or hardship." *Merrill v. Milligan*, 142 S. Ct. 879, 881 (2022) (Kavanaugh, J., concurring); *see also Malliotakis*, 146 S. Ct. at 810 ("relief may be inequitable if it is issued shortly before an election").

*Purcell* cuts entirely against federal court action. Plaintiffs frame this case as one about preventing disruption from switching maps. But there is nothing to "switch." As the Missouri Supreme Court unanimously held, under state law HB 1 "is not the law and has never been the law." Slip op. at 12. The 2022 districts are the only lawful districts in effect. Plaintiffs ask this

Court to *change* the rules by mandating use of a map that has never been the law, overriding a unanimous ruling of the State's highest court. That is precisely the federal intervention *Purcell* condemns.

None of the *Merrill* factors favor Plaintiffs. The merits are not "entirely clearcut"—the Missouri Supreme Court unanimously rejected every argument, and the United States Supreme Court has repeatedly upheld state referenda on redistricting. *See Ohio ex rel. Davis v. Hildebrandt*, 241 U.S. 565, 569 (1916); *Moore v. Harper*, 600 U.S. 1, 25–26 (2023). The 2022 districts are the status quo—the only lawful map. And any practical difficulties are of the Secretary's own making; the Missouri Supreme Court specifically noted that he "chose to delay his certification until the last possible day" and "chose not to seek resolution of the constitutional question despite having been told at least as early as December 2025 he had the unique ability as secretary to do so." Slip op. at 12 n.8. ***This Court*** warned him in December 2025. *See Mo. Gen. Assembly v. Von Glahn*, 2025 WL 3514277, at *2 n.2 (E.D. Mo. Dec. 8, 2025).

The timing of Plaintiffs' filing underscores bad faith. The Missouri Supreme Court expedited the case so its ruling would issue before the September 8, 2026 statutory deadline. Plaintiffs filed this lawsuit on Friday evening before a holiday weekend, ensuring maximum pressure for emergency action with minimum time for deliberation. This gamesmanship is the antithesis of the orderly process *Purcell* demands.

The *Growe* doctrine provides an additional bar. The Supreme Court unanimously held in *Growe v. Emison*, 507 U.S. 25, 34 (1993): "States have the primary duty and responsibility to perform [redistricting], and federal courts must defer their action when a State, through its legislative *or judicial branch*, has begun in timely fashion to address the issue." (emphasis added). Missouri, through its judicial branch, timely addressed the status of HB 1, using specific processes

mandated by Missouri statutes, including a highly expedited schedule that had the case heard and fully decided by the Missouri Supreme Court in a matter of weeks. "Absent evidence that these state branches will fail timely to perform that duty, a federal court must neither affirmatively obstruct state reapportionment nor permit federal litigation to be used to impede it." *Id.*

When a state court enters a final redistricting judgment, federal courts are "obligated . . . to give that judgment legal effect." *Id.* at 35–36. The Missouri Supreme Court held that HB 1 "never took effect" and the 2022 districts are "the only valid congressional redistricting in effect." That judgment is binding, and Plaintiffs' request for a federal order displacing it is barred.

## V. *YOUNGER* ABSTENTION BARS FEDERAL INTERFERENCE WITH ONGOING STATE PROCEEDINGS

Under *Younger* abstention, federal courts should decline jurisdiction when "(1) there is an ongoing state proceeding, (2) which implicates important state interests, and (3) there is an adequate opportunity to raise any relevant federal questions in the state proceeding." *Plouffe v. Ligon*, 606 F.3d 890, 892 (8th Cir. 2010). A state proceeding remains "ongoing" until all avenues of appellate review—including Supreme Court review under 28 U.S.C. § 1257—have been exhausted. *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 605 (1975). Even where state court proceedings have concluded, *Younger* still bars a federal action, and the appropriate disposition is dismissal. *Tony Alamo Christian Ministries v. Selig*, 664 F.3d 1245, 1251 (8th Cir. 2012).

All three conditions are met. First, the state proceedings are ongoing—the Secretary has filed an emergency stay application at the Supreme Court, with a response ordered by September 7 and a reply by September 8. Second, the proceedings implicate the most important of state interests: administering state elections. *See Miller v. Johnson*, 515 U.S. 900, 915 (1995). Third, there was a full opportunity to raise federal claims in the state proceedings. Both the Secretary and the Intervenors extensively briefed Elections Clause, Equal Protection, and Article I § 2 arguments

before the Missouri Supreme Court. The proper avenue for further review is the Supreme Court, not a parallel federal district court action.

*Younger* abstention thus requires dismissal. The losing parties in *von Glahn* have a clear path to seek federal review: certiorari to the Supreme Court. Indeed, that path is already being pursued.

## VI. THE ANTI-INJUNCTION ACT BARS THE REQUESTED RELIEF

The Anti-Injunction Act provides that federal courts "may not grant an injunction to stay proceedings in any State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Act's prohibition is comprehensive, reaching "all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." *Hill v. Martin*, 296 U.S. 393, 403 (1935). Plaintiffs' request that Missouri officials use HB 1 rather than the 2022 districts would, in substance, override the Missouri Supreme Court's judgment. Section 2283 cannot be avoided by addressing an order to the parties rather than to a state court. *Atl. Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287–88 (1970).

The Complaint asks this Court to "prevent Defendants from using any Congressional map other than the HB1 map until amended by the Missouri General Assembly." Compl., Prayer for Relief ¶ C. Granting that relief would directly countermand the Missouri Supreme Court's order requiring use of the 2022 districts.

None of the three exceptions applies. There is no prior federal judgment to "protect or effectuate."[4] There is no express congressional authorization for federal courts to enjoin state court

[4] Indeed, the Secretary and Plaintiffs' counsel previously *lost* a federal case trying to raise these issues in December 2025. *See Mo. Gen. Assembly v. Von Glahn*, No. 4:25-CV-1535-ZMB, 2025 WL 3514277 (E.D. Mo. Dec. 8, 2025). They failed to take a timely appeal from that order.

election orders. And there is no jurisdictional necessity—28 U.S.C. § 1257 vests exclusive jurisdiction to review state court judgments in the United States Supreme Court, not federal district courts.

## VII. RES JUDICATA AND COLLATERAL ESTOPPEL BAR RELITIGATION

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, federal courts must give state court judgments "the same preclusive effect" they would receive "in the rendering state's courts." *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 293 (2005). This requires giving the Missouri Supreme Court's judgment in *von Glahn* the same claim-preclusive and issue-preclusive effect a Missouri court would give it.

Both claim preclusion and issue preclusion apply. The Elections Clause arguments that form the core of the federal Complaint were extensively briefed by the Secretary and Intervenors (represented by the same counsel now representing Plaintiffs) before the Missouri Supreme Court. *See* Intervenors-Respondents' Br. at 14–46; Respondent's Br. at 27–39.

The Missouri Supreme Court addressed these federal constitutional issues on the merits, unanimously holding that the Elections Clause does not prohibit state referenda on congressional redistricting, *Von Glahn*, slip op. at 6, and rejecting the "clear statement" argument," *id.* at 6–7.

Missouri's four-identity test for *res judicata* includes "identity of the persons and parties to the action," but that requirement is satisfied by privity. *Emerald Pointe, LLC v. Taney Cnty. Missouri*, 78 F.4th 428, 433 (8th Cir. 2023). Plaintiffs satisfy that standard: they seek the same relief as the *von Glahn* Intervenors, advance the same constitutional theories, and are represented by the same counsel.

At least three of the Supreme Court's recognized nonparty-preclusion categories apply. *Taylor v. Sturgell*, 553 U.S. 880, 893–95 (2008), holds that "a nonparty is bound by a judgment if

she assumed control over the litigation in which that judgment was rendered," and that "a party bound by a judgment may not avoid its preclusive force by relitigating through a proxy." *Id.* at 895. The *von Glahn* Intervenors assumed control over litigation of the very federal constitutional arguments Plaintiffs now reassert. And this action is a proxy effort: the same counsel and aligned interests seek to relitigate through new nominal plaintiffs what they lost in state court.

## VIII. PLAINTIFFS LACK ARTICLE III STANDING

To establish Article III standing, a plaintiff must demonstrate "(1) an injury in fact that is concrete, particularized, and actual or imminent; (2) that the injury was likely caused by the defendant; and (3) that the injury would likely be redressed by judicial relief." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Plaintiffs cannot satisfy these requirements.

Plaintiffs' claims are premised on having a legally cognizable interest in being governed by the HB 1 districts. But the Missouri Supreme Court unanimously held that HB 1 "never took effect" and "has never been the law." *Von Glahn*, slip op. at 12–13. Because the referendum petition was filed before HB 1's effective date, HB 1 was "referred to the people" and never became law. *Id.* at 11–12.

Plaintiffs have no legally cognizable interest in being governed by a map that has never been the law. Congressman Onder and Mr. Brattin voluntarily chose to run in the HB 1 districts knowing the referendum petition was pending and that the Missouri Supreme Court had expressly held in May 2026 that HB 1 was not in legal effect if the referendum petition was sufficient. *See Maggard v. State*, 733 S.W.3d 411, 419-20 (Mo. banc 2026). Plaintiffs Thomas and Havens are Republican Party leaders who similarly supported the Secretary's litigation strategy. All four Plaintiffs assumed the risk that HB 1 might never become law.

To the extent Plaintiffs formed expectations based on the Secretary's premature use of HB 1 for the August 4, 2026 primary, those expectations were based on improper conduct. The Missouri Supreme Court explained that the Secretary "chose to delay his certification until the last possible day" and "chose not to seek resolution of the constitutional question despite having been told at least as early as December 2025 he had the unique ability as secretary to do so under Missouri statutes." *Von Glahn*, slip op. at 12 n.8. Any injury is self-inflicted.

Voters and candidates have no constitutional right to demand the use of a particular redistricting map. Their right is to vote in lawful districts—and the 2022 districts are the only lawful districts in effect. Plaintiffs' claimed injuries arise from the Missouri Supreme Court's enforcement of the Missouri Constitution, not from any constitutional violation.

## IX. THE COMPLAINT FAILS ON THE MERITS

### A. The Elections Clause Does Not Bar State Referenda on Congressional Redistricting

Plaintiffs' central claim—that the Elections Clause prohibits Missouri from subjecting a congressional redistricting act to a popular referendum—has been rejected as "plainly without substance" for over a century. In *Ohio ex rel. Davis v. Hildebrandt*, 241 U.S. 565, 569 (1916), the Supreme Court held that a state constitution's authorization of a referendum on congressional redistricting does not violate the Elections Clause.

Nothing has changed. In *Moore v. Harper*, 600 U.S. 1, 25–26 (2023), the Supreme Court reaffirmed that "redistricting is a legislative function, to be performed in accordance with the [s]tate's prescriptions for lawmaking, which may include the referendum and the Governor's veto." The Court rejected "the contention that the Elections Clause vests state legislatures with exclusive and independent authority when setting the rules governing federal elections." *Id.* at 25;

*see also Ariz. State Leg. v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 805 (2015); *Hawke v. Smith*, 253 U.S. 221, 230–31 (1920).

Missouri's Constitution is indistinguishable from the Ohio provision upheld in *Hildebrandt.* Article III, Section 49 provides that "[t]he people . . . reserve power to approve or reject by referendum *any act of the general assembly*." Mo. Const. art. III, sec. 49 (emphasis added). As the Missouri Supreme Court observed, "[t]here is no meaningful difference between article III, section 49 and the Ohio constitutional provision the Supreme Court upheld in *Hildebrandt* in 1916." *Von Glahn*, slip op. at 7. It also held that "the referendum and initiative petition power in article III, section 49 . . . is an essential part of the state's lawmaking process under the Missouri Constitution." *Id.* at 8. This holding is dispositive.

Plaintiffs' "clear statement" theory—that the Missouri Constitution must specifically subject congressional redistricting to the referendum—was unanimously rejected. The court held that "any act of the general assembly" includes congressional redistricting acts and that congressional redistricting "is a legislative act." *State ex rel. Carroll v. Becker*, 45 S.W.2d 533, 537 (Mo. banc 1932); *Von Glahn*, slip op. at 7, 10. The Elections Clause claim is foreclosed by over a century of precedent.

B. The Article I, § 2 and Equal Protection Claims Are Meritless

Plaintiffs' Article I, § 2 and Equal Protection claims rest entirely on the premise that HB 1 was lawfully in effect when the August 4, 2026 primary was conducted. But this premise is false. As the Missouri Supreme Court unanimously held, "HB 1 is not the law and has never been the law." *Von Glahn*, slip op. at 12. Any confusion caused by use of the HB 1 districts was the result of the Secretary's own unlawful conduct—his premature implementation of a map that had never taken effect. *Id.* at 12 n.8.

The Constitution does not require the perpetuation of an error. It requires the use of the only lawful districts—the 2022 congressional districts. Indeed, federal law independently requires use of those districts: under 2 U.S.C. § 2c, Representatives must be elected "from districts established by law." The only districts "established by law" in Missouri are the 2022 districts.

## X. THE COMPLAINT IS PROCEDURALLY DEFECTIVE FOR FAILURE TO REQUEST A THREE-JUDGE PANEL

Section 2284(a) provides that "[a] district court of three judges shall be convened . . . when an action is filed challenging the constitutionality of the apportionment of congressional districts." 28 U.S.C. § 2284(a). This mandatory language "creates an obligation impervious to judicial discretion." *Shapiro v. McManus*, 577 U.S. 39, 43 (2015).

The Complaint unquestionably challenges the constitutionality of the apportionment of congressional districts: it asks this Court to declare the use of Missouri's only lawful districts unconstitutional and to enjoin Defendants from using anything other than HB 1. Yet nowhere do Plaintiffs request a three-judge court. "A single judge shall not . . . enter judgment on the merits" or "hear and determine any application for a preliminary or permanent injunction." 28 U.S.C. § 2284(b)(3). A single judge cannot grant the relief Plaintiffs seek.

## CONCLUSION

For the foregoing reasons, Proposed Intervenor-Defendants respectfully request that this Court dismiss the Complaint with prejudice.

Respectfully submitted

**STINSON LLP**

*/s/ Charles W. Hatfield*
Charles W. Hatfield, No. 40363
Jeremy A. Root, No. 59451
Alexander C. Barrett, No. 68695
Alixandra S. Cossette, No. 68114
Greta M. Bax, No. 73354
230 W. McCarty Street
Jefferson City, Missouri 65101
Phone: (573) 636-6263
Facsimile: (573) 636-6231
chuck.hatfield@stinson.com
jeremy.root@stinson.com
alexander.barrett@stinson.com
alix.cossette@stinson.com
greta.bax@stinson.com

*Attorneys for Proposed Intervenors*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 5, 2026, I electronically filed the foregoing using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Charles W. Hatfield*
Charles W. Hatfield