**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| CONGRESSMAN ROBERT "BOB" ONDER, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>STATE OF MISSOURI and DENNY HOSKINS,<br><br>*Defendants*,<br><br>RICHARD VON GLAHN, et al.,<br><br>*Intervener-Defendants*. | Case No. 4:26-cv-01424-SRC |

**MEMORANDUM IN SUPPORT OF DEFENDANT'S MOTION TO ENJOIN <u>THE MISSOURI SUPREME COURT PURSUANT TO THE ALL WRITS ACT</u>**

## <u>INTRODUCTION</u>

On September 9, 2026, this Court "enjoin[ed], on federal law grounds, Secretary of State Hoskins—as well as his officers, agents, employees, and attorneys—from implementing, using, publishing, distributing, or mandating the use of any congressional district map other than the HB 1 map" in the upcoming General Election. Doc. 35 at 13. The Court did so because it concluded that Plaintiffs were likely to succeed on their claim that implementing the 2022 map at this late stage would violate Article I, Section 2 of the United States Constitution and the Equal Protection Clause of the Fourteenth Amendment—and because the "public interest favor[ed]" injunctive relief given the chaos that would ensue if the State did not use the HB 1 map. *Id.* at 8–12.

In reliance on that order, yesterday evening the Secretary emailed local election officials telling them to proceed with the HB 1 congressional map. Ex. A at 2. This was the only reasonable thing to do given the reality that Missouri's state-law deadline for altering the ballot passed following this Court's order, Mo. Rev. Stat. § 115.125(2), Doc. 35 at 3, and that ballots must be sent out to military and overseas voters in *ten days*, *see* 52 U.S.C. § 20302(a)(8).

Soon thereafter, Defendant-Intervenor Richard Von Glahn ("Von Glahn") made an emergency application to the Missouri Supreme Court, seeking to hold the Secretary of State and in contempt for following this Court's clear direction. Ex. A. Von Glahn's motion is a blatant attempt to frustrate this Court's order. Indeed, Von Glahn proclaimed that the Missouri Supreme Court should "make clear that

*regardless of other orders* (except from the United States Supreme Court) the Missouri Secretary of State must comply with [the Missouri Supreme Court's] injunction," and that the Missouri Supreme Court "should instruct all local election authorities that HB 1 is not the law and has never been the law." *Id.* at 4.[1]

Remarkably, the Missouri Supreme Court is taking Von Glahn's motion very seriously. Just a few hours after his motion was filed, that court ordered Secretary of State Hoskins to show cause why he should not be held in contempt, setting a response deadline of noon on September 9. Ex. B. The Missouri Supreme Court's order suggests—wrongly—adopts Von Glahn's suggestion that this Court's order is barred by the *Rooker-Feldman* doctrine. *See* Ex. B (citing *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003)). That court's order also suggests that it's order relying on state law trumps a federal court's order relying on federal law—unless the U.S. Supreme Court sets aside their order first. *Id.*

Von Glahn seems confused about how the Supremacy Clause works. This Court's order to use the HB 1 map relied on federal law. Doc. 35 at 13. The Missouri Supreme Court relied solely on *state law* in ordering Secretary Hoskins to use the 2022 map. *See Von Glahn v. Hoskins*, --- S.W.3d ----, 2026 WL 2628846, at *2 n.5 (Mo. Sept. 3, 2026) (refusing to consider the Secretary's federal arguments). There is no actual conflict between these orders, and even if there were, this Court's order would

---

[1] Defendant-Intervenors' Counsel also gave a media interview suggesting that local election officials should not comply with this Court's order, and, indeed, *should not implement any congressional map at all*. *See* Video posted by Mark Maxwell (@MarkMaxwellTV), X (Sept. 8, 2026), https://x.com/MarkMaxwellTV/status/2097507770991886764. Defendants considered moving this Court to sanction Counsel, but they (unlike Counsel) do not wish to escalate an already unprecedented situation.

govern. *See Madej v. Briley*, 370 F.3d 665, 665–668 (7th Cir. 2004) (when confronted with conflicting orders by federal district court and state supreme court, state officials are duty-bound to carry out the former).

This Court should bar the Missouri Supreme Court's attempt to punish Secretary Hoskins for complying with this Court's order. Although the Anti-Injunction Act typically prohibits federal courts from enjoining state-court proceedings, a textual exception exists for situations where it is "necessary . . . to protect or effectuate [a federal court's] judgments." 28 U.S.C. § 2283. That fits this case to a tee. *See Badgley v. Santacroce*, 800 F.2d 33, 38 (2d Cir. 1986) (state courts cannot hold parties in contempt for following federal orders); *Thomason v. Cooper*, 254 F.2d 808, 810–11 (8th Cir. 1958) (state court order could not be used to prevent implementation of federal court mandate to desegregate schools, which would put local officials in the impossible position of violating one order or the other).

This Court should immediately enjoin the Missouri Supreme Court from holding the Secretary in contempt for attempting to implement the HB 1 map in accordance with this Court's Order and endeavoring to avoid the "havoc" that would be "wreak[ed]" by using a different map for the general election than for the primary election. *See* Doc. 35 at 12.

## LEGAL STANDARD

Under the All Writs Act, 28 U.S.C. § 1651, this Court has the authority "to issue such commands as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued." *McKenzie Cnty. v. United States*,

131 F.4th 877, 886–87 (8th Cir. 2025) (internal quotations omitted); *accord Knox v. Lichtenstein*, 654 F.2d 19, 21 n.2 (8th Cir. 1981). The All Writs Act is employed "flexibly" where "calculated in [the court's] sound judgment to achieve the ends of justice entrusted to it." *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 173 (1977).

## ARGUMENT

This Court should enjoin the Missouri Supreme Court from holding Secretary of State Denny Hoskins in contempt. The Supremacy Clause states that federal law is "the supreme law of the land, . . . any thing in the Constitution or Laws of any State to the Contrary Notwithstanding." *United States v. Missouri*, 114 F.4th 980, 986 (2024), *cert denied*, 146 S.Ct. 90 (2025) (quoting U.S. Const. art. VI, cl. 2). State law cannot be used to preempt or invalidate federal law, nor to frustrate the ends of the United States Constitution. *Id.* Thus, "it is improper under the Supremacy Clause of the United States Constitution for the state courts to make orders inconsistent with those of the federal courts." *United States v. Michigan*, 712 F.2d 242, 242 (6th Cir. 1983) (quotation omitted). This general prohibition extends to contempt orders that "ha[ve] the effect of punishing conduct that [the federal court] ha[s] expressly permitted." *Id.* Likewise, "Supremacy Clause considerations require that the judgment of the federal court be respected," and a state court may not hold a party "in contempt for taking actions required by the judgment of the District Court[.]" *Badgley*, 800 F.2d at 38. A federal injunction binds the parties even if entered by consent, which prevents the interference of state courts. *Id.*; *see also Nat'l R.R. Passenger Corp. v. Pa. Pub. Utility Comm'n*, 342 F.3d 242, 259–60 (3d Cir. 2003)

(federal courts can enforce their consent decrees over conflicting state court orders); *accord United States ex rel. Anti-Discrimination Ctr. of Metro N.Y., Inc. v. Westchester Cnty.*, 712 F.3d 761, 772 (2d Cir. 2013).

Despite von Glahn's antics, this case is not particularly complicated. This Court—a federal court—has given Secretary Hoskins an order—under federal law—to implement the HB 1 map for the 2026 General Election. That governs over a state court order—relying only on state law—to use a different congressional map for the 2026 General Election. *See Madej*, 370 F.3d at 665–668. Defendants *must* comply with this Court's order.

The Anti-Injunction Act envisions federal-court injunctions against state court proceedings in this narrow situation. That is why it authorizes this court to "grant an injunction to stay proceedings . . . where necessary . . . to protect or effectuate its judgments." 28 U.S.C. § 2283. This exception to the Anti-Injunction Act is "designed to ensure the effectiveness and supremacy of federal law." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 146 (1988). This Court is "not required to stand by and let the state court impair a federal judgment preserving the status quo." *NBA v. Minn. Professional Basketball, Ltd. P'Ship*, 56 F.3d 866, 872 (8th Cir. 1995).

In opposing this straightforward conclusion, von Glahn's sanctions motion to the Missouri Supreme Court makes a few points; all obviously fail.

*First*, Von Glahn suggested (to the Missouri Supreme Court and in a television interview) that this Court's order does not require using the HB 1 map. Ex. A at 2; Note 1, *supra*. But this is not plausible reading of this Court's order. The basis of

this Court's decision was that using a different congressional map than the Primary Election would likely violate the U.S. Constitution and the federal *Purcell* principle. Doc. 35 at 8–12. This Court's order—which prohibits the Secretary "from implementing, using, publishing, distributing, or mandating the use of any congressional district map other than the HB 1 map for the November 3, 2026 general election," Doc. 35 at 13—clearly requires Defendants to use the HB 1 map.

*Second*, Von Glahn argued that the *Rooker-Feldman* doctrine prohibits this Court's order. This Court has already considered (and was apparently unpersuaded) by this argument. Proposed Intervenor-Defendants' Mot. to Dismiss Complaint and Combined Memo in Supp't 6–7 (Doc. 33). And it clearly does not apply here because Plaintiffs were not parties to the state-court action. *See Lance v. Dennis*, 546 U.S. 459, 466 (2006). Further, the Missouri Supreme Court did *not* even address the federal constitutional claims discussed by this Court. Plaintiffs are not asking this Court to review the Missouri Supreme Court's state-law holdings—but merely asking this Court to protect their federal constitutional rights. This Court is empowered to enjoin the re-litigation of issues the Court has already decided in state court. *Daewoo Electronics Corp. of Am., Inc. v. Western Auto Supply Co.*, 975 F.2d 474, 477 (8th Cir. 1995).

*Third*, Von Glahn told the Missouri Supreme Court that, "regardless of other orders (except from the United States Supreme Court) the Missouri Secretary of State must comply with" the Missouri Supreme Court's order. Ex. B at 4. This is wrong (and, frankly, frivolous). Federal courts relying on federal law trump state courts

relying on state law; this is pretty basic stuff. *Madej*, 370 F.3d at 665–66. Making this case even easier, the Missouri Supreme Court's order did not *even discuss*—let alone issue holdings on—the federal constitutional issues in this case. Although the U.S. Supreme Court *could* have reviewed the Missouri Supreme Court's state-law holdings, it chose not to—which it could have done for a wide range of reasons considering that it reviews stay applications in a discretionary posture where it only grants applications deemed certworthy. *See Does 1-3 v. Mills*, 142 S.Ct. 17, 18 (2021) (Barrett, J., concurring in denial of application for injunctive relief). A stay decision is not a decision on the merits. *Merril v. Milligan*, 142 S.Ct. 879, 879 (Kavanaugh, J., concurring in grant of application for stays); *Graves v. Barnes*, 405 U.S. 1201, 1204 (1972) (Powell, J., in chambers). It would be foolhardy to speculate why Justice Kavanaugh denied the stay request here, but he could have easily done so because he perceived an independent and adequate state law ground for the Missouri Supreme Court's decisions (as Von Glahn argued) or because he determined the case was too fact-bound to be worthy of certiorari. *See generally Cruz v. Arizona*, 598 U.S. 17, 25 (2023). In all events, Justice Kavanaugh's decision does not (and cannot) foreclose this Court from addressing Plaintiffs' claims.

## CONCLUSION

For the above reasons, the Court should grant Defendants' motion to enjoin the Missouri Supreme Court's contempt proceeding against Secretary Hoskins.

Dated: September 9, 2026

Respectfully submitted,

**CATHERINE L. HANAWAY**
ATTORNEY GENERAL

/s/ *Louis J. Capozzi III*

Louis J. Capozzi III, #77756(MO)
*Solicitor General*
William James Seidleck, #77794(MO)
*Principal Deputy Solicitor General*
J. Michael Patton, #76490(MO)
*Deputy Solicitor General*
Graham Miller, #77656(MO)
*Deputy Solicitor General*

OFFICE OF THE ATTORNEY GENERAL
Old Post Office Building
815 Olive Street, Suite 200
St. Louis, MO 63101
Phone: (573) 645-9662
Louis.Capozzi@ago.mo.gov
William.Seidleck@ago.mo.gov
Michael.Patton@ago.mo.gov
Graham.Miller@ago.mo.gov

*Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2026 the foregoing was filed electronically through the Court's electronic filing system to be served electronically on counsel for all parties.

/s/ *Louis J. Capozzi III*