**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| CONGRESSMAN ROBERT "BOB" ONDER, RICHARD "RICK" BRATTIN, PATRICIA "PAT" THOMAS, and DEBRA HAVENS,<br><br>*Plaintiffs,*<br>v.<br><br>STATE OF MISSOURI and DENNY HOSKINS, in his official capacity as Missouri Secretary of State,<br><br>*Defendants.* | ) | **Case No. 4:26-cv-01424-SRC** |

**INTERVENOR-DEFENDANTS' RESPONSE TO DEFENDANT HOSKINS' MOTION TO ENJOIN THE MISSOURI SUPREME COURT UNDER THE ALL WRITS ACT**

On September 9, this Court ordered Intervenor-Defendants to respond to Defendant Denny Hoskins 's Motion to Enjoin the Supreme Court of Missouri under the All-Writs Act (the "Motion"). As an initial matter, Intervenor-Defendants do not represent the Supreme Court of Missouri and are not aware that the Court has been served with process. Setting that issue aside, the Court should deny the Motion for myriad reasons. First, the Anti-Injunction Act forbids this Court from enjoining the Supreme Court of Missouri 's contempt proceedings. Second, this Court does not have jurisdiction over the Supreme Court of Missouri. Third, Defendant will not suffer irreparable harm absent an injunction, and an injunction would damage the integrity of the state courts.

## I. THE ANTI-INJUNCTION ACT FORBIDS THIS RELIEF

The Anti-Injunction Act provides that federal courts "may not grant an injunction to stay proceedings in any State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28

U.S.C. § 2283. The Act 's prohibition is comprehensive, reaching "all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process." *Hill v. Martin*, 296 U.S. 393, 403 (1935). The exceptions "should not be enlarged by loose statutory construction," and "[p]roceedings in state courts should normally be allowed to continue unimpaired by intervention of the lower federal courts." *Atl. Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287–88 (1970)

A contempt hearing before the Missouri Supreme Court is indisputably a "proceeding in a State court." Any federal order halting that hearing would directly contravene § 2283 unless one of the three narrow exceptions applies. The movant must therefore identify a specific exception. As discussed below, none of the three fits here. First, there is no act of Congress authorizing this injunction. In fact, the most relevant act of Congress is Section 2283, which forbids this.

Second, the injunction is not necessary in aid of this Court 's jurisdiction. The movant apparently invokes § 1651 to supply authority under the § 2283 exception for injunctions "where necessary in aid of its jurisdiction." This argument faces a critical threshold problem: **the All Writs Act is not an independent source of jurisdiction.** It is a residual tool that permits federal courts to protect jurisdiction they already have — it cannot expand that jurisdiction or create it where it does not otherwise exist. In *Atlantic Coast Line*, the Supreme Court rejected an attempt to use the "necessary in aid of its jurisdiction" exception to the Anti-Injunction Act in similar circumstances, holding that a federal court's earlier denial of an injunction did not give it continuing jurisdiction that needed to be "aided" by enjoining the state proceeding.

Here, the TRO this Court entered is an order directed at the Secretary — it regulates *his* conduct. It does not purport to, nor could it, enjoin the Missouri Supreme Court from exercising its own inherent judicial powers. A state court conducting a contempt proceeding is not interfering with the federal court's jurisdiction; it is exercising its own jurisdiction over its own case and its own orders. There is no "race to judgment" that requires one court to halt the other.

The third exception to the Anti-Injunction Act permits federal courts to issue an injunction "to protect or effectuate its judgments." This Court issued only a temporary restraining order — not a final judgment. As the Supreme Court explained in *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140 (1988), "[a]n essential prerequisite for applying the Act 's relitigation exception is that the claims or issues which the federal injunction insulates from state court litigation actually have been decided by the federal court." The relitigation exception "requires an assessment of the precise state of the record and what the earlier federal order *actually* said; it does not permit a *post hoc* judgment as to what the order was *intended* to say." The Supreme Court has consistently demanded that the relitigation exception be applied "strict[ly] and narrow[ly]."

Moreover, even if the TRO qualifies as a "judgment," the relitigation exception protects against parties re-presenting *the same issues* in state court that were already decided in federal court. The Missouri Supreme Court 's contempt proceeding does not relitigate anything the federal court decided. The state court is not asking whether the Secretary has a right to use the HB 1 map — it is asking whether the Secretary is in contempt of *the state 's highest court*. These are fundamentally different proceedings with different parties raising different issues

In *Younger v. Harris*, 401 U.S. 37 (1971), the Supreme Court established that federal courts should not interfere with pending state court proceedings absent extraordinary circumstances, grounding this rule in "the notion of 'comity,' that is, a proper respect for state functions." Critically, the Supreme Court expressly extended *Younger* abstention to state contempt proceedings in *Juidice v. Vail*, 430 U.S. 327 (1977), holding that "federal-court interference with the State's contempt process is 'an offense to the State's interest . . . .'" The Court further observed that "the contempt power lies at the core of the administration of a State's judicial system" and that federal interference with that power "can readily be interpreted 'as reflecting negatively upon the state court's ability to enforce constitutional principles.'" *Id. Juidice v. Vail* ends the inquiry, and this Court has neither authority nor jurisdiction to enjoin the Missouri Supreme Court.

## II. THE PARTY SEEKING TO BE ENJOINED IS NOT BEFORE THE COURT

Federal Rule of Civil Procedure 65(d)(2) is explicit and limiting about who can be bound by an injunction or restraining order. The order "binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."

As the Supreme Court explained in *Regal Knitwear Co. v. NLRB*, 324 U.S. 9 (1945), this rule "is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." Its purpose is narrow: to prevent parties from nullifying a decree "by carrying out prohibited acts through aiders and abettors." *Id.* at 14.

A person who is not a party to the federal litigation and is not acting in "active concert or participation" with a party **cannot be bound** by the court's injunction. If the person the EDMO seeks to enjoin is not a party to the *Onder* case, the court must show either that the person falls within the "officers, agents, servants, employees, and attorneys" category or is in "active concert or participation" with a named party. A wholly independent person — such as, for example, the Missouri Supreme Court itself — would not be subject to the TRO at all.

### A. The Constitutional Rule: No Jurisdiction Without Service or Appearance

The Supreme Court stated the foundational principle in *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100 (1969): "It is elementary that one is not bound by a judgment *in personam* resulting from litigation in which he is not designated as a party or to which he has not been made a party by service of process." "The consistent constitutional rule has been that a court has no power to adjudicate a personal claim or obligation unless it has jurisdiction over the person of the defendant." Even an injunction under Rule 65(d) aimed at a non-party cannot be held in contempt until shown to be "in concert or participation" — and that determination must be made "in a proceeding to which [the non-party] was a party." *Id.* at 112. This means a federal court cannot simply direct an injunction at a person who was never served, never appeared, and was never joined as a party, regardless of whether the person has "notice" of the order.

### B. The District Boundary Problem: Jefferson City Is in the Western District

Under 28 U.S.C. § 105, Missouri is divided into two judicial districts. The Eastern District encompasses counties such as St. Louis, St. Charles, Franklin, Jefferson, and Lincoln — essentially the eastern portion of the state. Jefferson City — where the Secretary

of State's office is located and where much of the state government operates — is in Cole County, which falls within the Western District of Missouri.

This geographic division creates a serious venue and personal jurisdiction issue. Even for an actual party to an action, a federal court must have personal jurisdiction. For a non-party who both (a) was not joined in the EDMO case and (b) resides and operates exclusively in the Western District, the EDMO's authority to direct injunctive relief at that person is deeply questionable. The court 's territorial reach for service of process is generally governed by Federal Rule of Civil Procedure 4(k), which typically limits service to the boundaries of the state — but the ability to *bind* someone with an injunction requires that person to be a party or within Rule 65(d)(2)'s narrow categories.

### C. *Trump v. CASA* (2025): The Supreme Court's New Limits on Universal Relief

The Supreme Court's recent decision in *Trump v. CASA, Inc.* (2025) substantially strengthens this analysis. The Court held that "universal injunctions likely exceed the equitable authority that Congress has given to federal courts" under the Judiciary Act of 1789. The Court emphasized that under longstanding equity practice, "suits in equity were brought by and against individual parties, and the Chancellor's remedies were generally party specific." Quoting the English rule, the Court observed: "'[Y]ou cannot have an injunction except against a party to the suit.'"

The Court held that injunctions "broader than necessary to provide complete relief to each plaintiff with standing to sue" are impermissible. While *CASA* addressed universal injunctions against the executive branch specifically, its reasoning reinforces the fundamental principle that a federal court's equitable power extends only to the parties before it and, incidentally, to those in active concert with them.

## III. DEFENDANT HOSKINS CANNOT SHOW IRREPARABLE HARM

"The power to punish for contempt is inherent in all courts, has been many times decided and may be regarded as settled law. It is essential to the administration of justice." *Young v. U.S. ex rel. Vuitton et Fils, S.A.*, 481 U.S. 787, 795 (1987) (quoting *Michaelson v. United States ex rel. Chicago, St. P., M., & O.R. Co.*, 266 U.S. 42, 65-66 (1924)). The hearing that is set for tomorrow at the Supreme Court of Missouri is on Defendant Hoskins' response to that Court's order to show cause why he should not be held in contempt. The Missouri Court has jurisdiction over him, as he was a party to the *von Glahn v. Hoskins* case. Appearing for the hearing as required does not constitute irreparable harm to Secretary Hoskins; if he has not been in contempt of that Court, surely the Court will so conclude.

On the contrary, enjoining a state court from holding contempt proceedings *at all* does irreparable harm to the integrity of the state courts. "[S]uch interference with the contempt process not only 'unduly interfere(s) with the legitimate activities of the Stat(e),' but also 'can readily be interpreted' as reflecting negatively upon the state courts' ability to enforce constitutional principles." *Juidice*, 430 U.S. at 336 (cleaned up). This Court is not authorized to enter such injunctions.

## IV. CONCLUSION AND REQUESTED RELIEF

Intervenor-Defendants respectfully request that the Court deny Defendants' Motion for an Injunction against the Supreme Court of Missouri under the All-Writs Act.

Dated: September 9, 2026

Respectfully submitted,

**STINSON LLP**

*/s/ Jeremy A. Root*
Charles W. Hatfield, No. 40363
Jeremy A. Root, No. 59451
Alexander C. Barrett, No. 68695
Alixandra S. Cossette, No. 68114
Greta M. Bax, No. 73354
230 W. McCarty Street
Jefferson City, Missouri 65101
Phone: (573) 636-6263
Facsimile: (573) 636-6231
chuck.hatfield@stinson.com
jeremy.root@stinson.com
alexander.barrett@stinson.com
alix.cossette@stinson.com
greta.bax@stinson.com

*Attorneys for Proposed Intervenor-Defendants People Not Politicians and Richard von Glahn*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2026, I electronically filed the foregoing using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

*/s/ Jeremy A. Root*
Jeremy A. Root