# EXHIBIT A

**IN THE SUPREME COURT OF MISSOURI**

| | | |
|---|---|---|
| Richard von Glahn,<br><br>*Appellant*,<br><br>v.<br><br>Denny Hoskins, Secretary of State,<br><br>*Respondent*. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. SC101805 |

**<u>SUGGESTIONS REGARDING CONTEMPT</u>**

This Court appropriately ordered the Secretary of State to show cause why he should not be held in contempt of the September 6 Judgment. The Court's order asked the Secretary to address three things:

> (1) Why his e-mail on September 8, 2026, instructing use of the HB 1 map is not an affirmative violation of the Court's injunction. (2) How the Court's injunction is not still in full force and effect in light of the U.S. Supreme Court's overruling (denial of Respondent's emergency application for stay and administrative stay pending appeal. (3) If Respondent is not willing to comply with the Court's injunction, why he should not take no action in all things related to the congressional district map until guidance is received from a higher court with jurisdiction to review the Court's judgment and injunction and the federal district court's injunction, citing 28 U.S.C. § 1257 and Ballinger v. Culotta, 322 F.3d 546, 548 (8th Cir. 2003).

The Secretary's late-filed response never directly addresses any of the issues presented. The Secretary does not deny that the email he sent clearly and literally violates this Court's injunction. His response instead tries to reframe the issue as if the email was *compelled* by a federal court order but never identifies

anything in such order that would require the email or specifically require the use of HB 1. Nor does the Secretary deny or even contest that this Court's injunction remains in continuing force. His response tells this Court a good deal about the federal order, but very little about what he has done to comply with this Court's order.

Finally, and most importantly, the Secretary's response appears to be a flat-out rejection of this Court's request to explain why it would be inappropriate to simply "take no action" until a higher court with jurisdiction acts. A plain reading of the two orders reveals that the Secretary can comply with both orders by doing nothing until he hears from a higher authority. Instead he presents the false, binary choice between two orders rather than trying to, in good faith, comply with both.

The Secretary is certainly in contempt. This Court should say so and take appropriate remedial steps to address the harm his contempt causes to the State of Missouri and general election voters. Missouri courts have long held that every constitutional court of common-law jurisdiction possesses inherent power to punish for contempt. *Osborne v. Purdome*, 244 S.W.2d 1005, 1012 (Mo. 1951).

## I. The Standard to Apply Here

Under this Court's precedent, the matter before it is one of civil contempt. Those types of proceedings are "intended to benefit a party for whom an order, judgment, or decree was entered" and "coerce compliance with the relief granted." *State ex rel. Chassaing v. Mummert*, 887 S.W.2d 573, 578 (Mo. banc

1994). To establish a prima facie case, the movant must prove two elements: (1) a clear and specific obligation imposed by court order—here, the injunction barring the Secretary "and all those acting in concert with him" from "implementing, using, or mandating the use of the congressional redistricting in HB 1 for the November 2026 general election"—and (2) the contemnor's failure to comply with that obligation. *In re Marriage of Earls*, 77 S.W.3d 741, 743 (Mo. App. 2002).

Once the prima facie case is established, the burden shifts to the Secretary to justify his noncompliance. Because Missouri treats contempt proceedings as sui generis, *Osborne*, 244 S.W.2d at 1012, and all courts of record possess inherent power to enforce their orders through contempt, the Court has broad discretion in fashioning relief, so long as the sanction is designed to compel compliance rather than to punish, and Hoskins retains the ability to purge the contempt by obeying this Court's injunction. *See Chemical Fireproofing Corp. v. Bronska*, 553 S.W.2d 710, 714-15 (Mo. App. 1977).

## II. Factual Basis for a Finding of Contempt

The following is presented in chronological order beginning immediately after this Court's Judgment. The Secretary and his attorneys (acting in concert with him) have harshly criticized this Court's judgment, establishing that he is not interested in good faith compliance.

A. The Secretary's Application for Stay at the United States Supreme Court

In the Secretary's Application for Stay presented to, and denied by, Justice Kavanaugh, he said:

- "Yet the Missouri Supreme Court just threw those [primary] votes into the dustbin—requiring the winners of the Primary election to run in very different congressional districts." Emergency Application for Stay and Administrative Stay Pending Appeal at 3, *Hoskins v. von Glahn*, No. 26A304 (U.S. Sept. 4, 2026); A12.

- "What of the Secretary's federal defenses? The Missouri Supreme Court blatantly ignored them." *Id.* at 15; A24.

- "But this Court has never sanctioned the Missouri Supreme Court's bizarre and profoundly anti-democratic holding." *Id.* at 19; A28.

- "Reading between the lines, what seems to have driven the Missouri Supreme Court's disinterest in federal law was its displeasure with the Secretary's processing of Respondent's referendum petition." *Id.* at 26; A35.

- "Once again, the Missouri Supreme Court simply ignored this federal constitutional argument. The Secretary made this argument at trial; the trial court accepted it and made related factual findings; the argument was briefed to the Missouri Supreme Court. Yet that court's opinion proceeds as

if this argument did not exist. Such cavalier treatment of federal law is shocking and, frankly, unacceptable in a legal system where federal law is the supreme law of the land." *Id.* at 29; A38.

The Secretary's reply in support of his Application for Stay was even more disdainful:

- "…the chaotic fallout from the Missouri Supreme Court's irresponsible decision has only multiplied." Reply in Support of Emergency Application for Stay and Administrative Stay Pending Appeal at 1, *Hoskins v. von Glahn*, No. 26A304 (U.S. Sept. 8, 2026); A55.

- "Without relief from this Court, Applicant has no idea how to manage this chaos, which results from a blatantly unconstitutional court order." *Id.* at 2; A56.

- "This 'waiver' ruling is, unfortunately, a transparent attempt by the Missouri Supreme Court to insulate its decision from this Court's review—something this Court consistently disallows." *Id.* at 2; A56.

- "Additionally and bizarrely, the Missouri Supreme Court said that Secretary Hoskins's referendum certificate could not rely on federal law—leaving him with no state-court avenue to raise federal constitutional defenses." *Id.* at 3; A57.

- "That is easily true here because it would have been impossible for Applicant to comply with the Missouri Supreme Court's newly invented procedural rules. Indeed, the court's two attempts to manufacture AISGs contradict each other and cut off all review of Applicant's federal constitutional defenses." *Id.* at 6; A60.

- "Even more remarkably, at the same time the Missouri Supreme Court fabricated its new 'waiver' rule, it contradicted that rule with another new rule." *Id.* at 9; A63.

- "But assume that Respondent is correct and Secretary Hoskins acted improperly in deferring his rejection of the referendum petition until the state-law deadline. So what?" *Id.* at 28; A82.

B. The Federal Lawsuit- *Onder, et al., v. State of Missouri, et al.*

Immediately after this Court's Judgment, the attorney for the intervenor-respondent political committees in this case, Mr. Ellinger, filed suit in the United States District Court for the Eastern District of Missouri on behalf of certain individual officeholders and voters. *Onder v. Hoskins*, No. 4:26-cv-01424 (E.D. Mo. Sept. 5, 2026). That suit asked the federal district court to order the exact relief this Court had denied—stop the use of Missouri's only legally effective congressional districts and require the use of HB 1.

Secretary Hoskins and "the State of Missouri" were named as defendants. Richard von Glahn and People Not Politicians moved to intervene and to dismiss.

The federal court ordered a response to the motion to dismiss but did not order intervenor to respond to the motion for temporary restraining order. The Attorney General entered an appearance for both defendants but refused to defend the suit or this Court's judgment.

Instead, the Secretary, represented by the Attorney General, openly welcomed and encouraged the federal court's intervention. He immediately waived service of the lawsuit and then consented to a temporary restraining order. Waiver of Service of Summons, *Onder v. Hoskins*, No. 4:26-cv-01424 (E.D. Mo. Sept. 5, 2026), ECF No. 10; A95. In that filing, he specifically acknowledged that this Court's judgment prohibited him from using the HB 1 map but openly encouraged the federal court to interfere with this Court's judgment and the clear mandate it gave him. He said:

- "Under the extraordinary circumstances of this case, Defendants agree that Plaintiffs meet the thresholds warranting a temporary restraining order and ***join them*** in requesting that this Court issue said relief." Statement in Support of Plaintiffs' Request for a Temporary Restraining Order and Preliminary Injunction at 1, *Onder v. Hoskins*, No. 4:26-cv-01424 (E.D. Mo. Sept. 5, 2026), ECF No. 11; A96 (emphasis added).

- "Despite Plaintiffs' clear entitlement to legal relief, the State can do nothing to remedy the situation. The Missouri Supreme Court's order flatly prohibits

the State from conducting the general election according to the HB 1 map." *Id.* at 3; A98.

- "Likewise, no interest is furthered in conducting an unlawful election. Mem. in Support of TRO at 11. To the contrary, the State wishes to comply with federal law for the benefit of all its voters." *Id.* at 5; A100.

- "The Missouri Supreme Court's order prevents the State from making this situation right." *Id.* at 5; A100.

Within minutes of Justice Kavanaugh denying the application to stay this Court's judgment, Counsel for the political parties here and the individual plaintiffs there (Mr. Ellinger) notified the district court. Within 13 minutes of that notification, without asking for a response from intervenor and without a hearing, the federal court entered a temporary restraining order and waived any bond requirements. Memorandum and Order, *Onder v. Hoskins*, No. 4:26-cv-01424 (E.D. Mo. Sept. 8, 2026), ECF No. 35; A106.[1] Mr. von Glahn and People Not Politicians have appealed that ruling to the Eighth Circuit and United States Supreme Court.

[1] "Accordingly, the Court grants Plaintiffs' [2] motion for a temporary restraining order and enjoins, on federal law grounds, Secretary of State Hoskins—as well as his officers, agents, employees, and attorneys—from implementing, using, publishing, distributing, or mandating the use of any congressional district map other than the HB 1 map for the November 3, 2026 general election." *Onder v. Hoskins*, No. 4:26-cv-01424 (E.D. Mo. Sept. 8, 2026), ECF No. 35, A118.

C. <u>The Contempt is Open and Obvious</u>

The Secretary and his counsel clearly understood this Court's order. They told the federal court: "[t]he Missouri Supreme Court's order flatly prohibits the State from conducting the general election according to the HB 1 map." Statement in Support of Plaintiffs' Request for a Temporary Restraining Order and Preliminary Injunction at 3, *Onder v. Hoskins*, No. 4:26-cv-01424 (E.D. Mo. Sept. 5, 2026), ECF No. 11; A98. Nevertheless, as soon as the temporary restraining order he asked for was entered, the Secretary sent the following email to all local election officials[2], claiming the federal order is "requiring the use of the CD25 Missouri First Map."

> **Sent:** Tuesday, September 8, 2026 6:19 PM
> **Subject:** NEW DEVELOPEMENT - Temporary Restraining Order
>
> **CAUTION:** This email originated outside of **boonemo.gov**. ONLY use links and attachments which are familiar.
>
> The Eastern District has issued a Temporary Restraining Order, requiring the use of the CD25 Missouri First Map.
>
> CD25 candidates are already in the Election Management module.
>
> Information provided by the litigation team is that the federal court's ruling, based on federal law, takes precedence over the Missouri Supreme Court's order, which is based on state law. This is in accordance with the U.S Constitution's Supremacy Clause.
>
> This order is attached.
>
> Thank you!
>
> **Elections Division**
> Office of the Missouri Secretary of State Denny Hoskins
> Kirkpatrick State Information Center
> 600 West Main Street, Jefferson City, MO 65101
> elections@sos.mo.gov
> Office Phone: 573-751-2301 / 1-800-669-8683

[2] [2] The LEAs are, of course, not bound by the federal court's TRO and have no obligation to follow it. The TRO applies to the Secretary and his "agents" and "officers." The LEAs are not the Secretary's agents or officers. They are not parties to the federal case. They are independent public officials, all of whom have taken an oath to follow the Missouri Constitution and who are undoubtedly covered by this Court's Judgment (which covers anyone "acting in concert" with the Secretary). *See, e.g.*, §§ 115.015, 115.017, 115.023, 115.043, RSMo; *City of Lexington v. Seaton*, 819 S.W.2d 753 (Mo. App. 1991).

Almost simultaneously, the Missouri Attorney General, acting in concert with the Secretary, issued the following public statement:

> Missouri Attorney General Hanaway Releases Statement Following TRO Ruling in Congressional Maps Case
>
> ---
>
> JEFFERSON CITY, Mo. – Today, Missouri Attorney General Catherine Hanaway released the following statement after Chief Justice Clark granted the plaintiff's request for a temporary restraining order in Onder v. Missouri:
>
> "Missouri is prepared to follow and comply with Chief Judge Clark's order that binds the state to using the Missouri First map for the November General Election. We appreciate Judge Clark's support of the rights of Missouri voters, and intend to comply with this federal ruling. We maintain that changing the congressional map in between the primary and general elections is simply not feasible and profoundly unjust to Missouri voters," said General Hanaway.
>
> ###

Of course, nothing in the actual text of the federal order is "requiring the use of the CD25 Missouri First Map [aka HB 1]" as the Secretary says, nor does the language of the federal order "bind the state to using the Missouri First map for the November General Election" as the Attorney General announces. *See* Memorandum and Order, *Onder v. Hoskins*, No. 4:26-cv-01424 (E.D. Mo. Sept. 8, 2026), ECF No. 35; A106. And the federal court has no authority to overrule this Court's determination that HB 1 is not and has never been the law. Nor does anything in the federal court's order claim to "take precedence over the Missouri Supreme Court's order" as the Secretary's email advises.

"District courts may not review state court decisions, even if those challenges allege that the state court's action was unconstitutional, because federal jurisdiction to review most state court judgments is vested exclusively in the United States Supreme Court." *Ballinger v. Culotta*, 322 F.3d 546, 548 (8th Cir. 2003). *Ballinger* clearly counsels for this Court's "take no action" suggestion, which would allow the Secretary to comply with both orders while higher authorities resolve which should control the general election. This rule applies when a federal plaintiff acts in privity with, or as a proxy for, a state-court loser to pursue relief the state-court loser would be barred from seeking. *McCormick v. Braverman*, 451 F.3d 382, 396 (6th Cir. 2006); *Bruce v. City & County of Denver*, 57 F.4th 738, 748-50 (10th Cir. 2023).

And, even after this Court entered its show cause order, the Secretary continues to push for his preferred map rather than hit the pause button while these issues are resolved. In the immediate aftermath of this Court's show cause order, he posted the Court's order on social media with his comment that "the Show me state will not be run into the ground like the communists running NYC on my watch. I will continue to abide by Judge Clark's federal temporary restraining order…I look forward to my day in court." A132.[3] He also posed with

[3] Although he publicly proclaimed looking forward to his day in court, the Secretary has asked a federal court to enter a prior restraint on his day in court. He sought a writ against the Court from the federal court. Defendant's Motion to Enjoin the Missouri Supreme Court Pursuant to the All Writs Act, *Onder v. Hoskins*, No. 4:26-cv-01424 (E.D. Mo. Sept. 9, 2026), ECF No. 41; A119; *see also* Memorandum in Support of Defendant's Motion to Enjoin the Missouri Supreme Court Pursuant to

the federal plaintiff, Rick Brattin, for a thumbs up photo and "liked" a commenter's post, which included the words "Huge win tonight! The Dems, the State Supreme Court, and the media can suck it." A135. There can be no question that the Secretary is openly and intentionally defying this Court's judgment.

## III. The Secretary's Response

As explained above, the Secretary's untimely response to this Court's order: (1) never disputes that the injunction was validly entered and is in full force; (2) never disputes that he instructed local election authorities to use the HB 1 maps, which this Court has expressly enjoined; and (3) never points to any language in the federal order that prohibits his compliance with this Court's injunction.

No doubt the response is a full-throated defense of the federal court's authority to enter its TRO. von Glahn and People not Politicians challenge that authority and have sought review by the appropriate higher authorities at the Eighth Circuit Court of Appeals and the United States Supreme Court.

But this Court is not the right forum for a discussion of the federal court's authority to do what it did. The issue here is why the Secretary is defying *this* order. No federal court ordered him to send his email or to disregard this Court's injunction. He can comply with both injunctions by not using the HB 1 districts (as this court ordered) and also not using any other maps (as the federal court

---

the All Writs Act, *Onder v. Hoskins*, No. 4:26-cv-01424 (E.D. Mo. Sept. 9, 2026), ECF No. 43; A122.

has ordered). Doing so allows time for a reasoned, rational review by higher authorities.

Insofar as the Secretary is claiming that the federal TRO renders him *unable* to comply, such contention is wrong and rings hollow. A party who claims his inability to comply with a court order excuses his contempt must demonstrate that such inability "was neither intentional or contumacious." *A.G. v. R.M.D.*, 730 S.W.2d 543, 546 (Mo. banc 1987). The Secretary *can* comply with both orders while review is sought and he intentionally and contumaciously ginned up a friendly federal suit and consented to a TRO for the specific purpose of defying this Court.

## IV. What to Do?

What remains, then, is for this Court to decide how to use its broad authority to address the contempt. Appellant provides a menu of options below.

- The Court has already issued an injunction that covers all those acting in concert with Secretary Hoskins. All Local Election Authorities have notice of the Court's Judgment because it was attached to the certification the Secretary provided. § 116.200, RSMo. The Court should directly address those Local Authorities with language like: "All local election authorities are enjoined from using House Bill 1 districts in the upcoming general election until further order of this Court regardless of direction to the contrary from Secretary Hoskins or the Attorney General. If local

authorities receive any direction from any court or official to the contrary, they should immediately notify this Court."

- Order the Secretary, and those in concert with him including the Attorney General, to immediately cease and desist all efforts to undermine this Court's authority by making filings in any other Court except the Supreme Court of the United States. If the Secretary believes he must make filings in other courts, order him to first provide a copy to this Court 24 hours in advance.
- Appoint counsel to represent the interests of this Court and the State of Missouri in defending its orders and authority in federal court because the Attorney General is unwilling or unable to do so.

## V. Conclusion

The Secretary's direction to local election authorities to use HB 1 is a direct violation of this Court's injunction and must not be allowed to stand unaddressed. The false choice between this Court and a temporary restraining order issued by one federal district court judge should be rejected—the Secretary may comply with this Court's order without violating the district court order. And vice versa.

Respectfully submitted,

**STINSON LLP**

*/s/ Charles W. Hatfield*
Charles W. Hatfield, No. 40363
Alexander C. Barrett, No. 68695
Alixandra S. Cossette, No. 68114
Greta M. Bax, No. 73354
230 W. McCarty Street
Jefferson City, Missouri 65101
Phone: (573) 636-6263
Fax: (573) 556-3632
chuck.hatfield@stinson.com
alexander.barrett@stinson.com
alix.cossette@stinson.com
greta.bax@stinson.com

**ATTORNEYS FOR PLAINTIFF**

**CERTIFICATE OF SERVICE**

I hereby certify that on September 9, 2026, I electronically filed the foregoing with the Clerk of Court using the Court's e-filing system.

*/s/ Charles W. Hatfield*